NATIONAL FLEET SUPPLY, INC.,
Defendant-Appellant,

v.

Larry J. FAIRCHILD, Plaintiff-Appellee.

No. 4–982A278.

Court of Appeals of Indiana,
Third District.

June 27, 1983.

P. Gregory Cross, Cross, Marshall, Schuck, DeWeese & Cross, Muncie, for defendant-appellant.

Robert S. Koor, Muncie, for plaintiff-appellee.

GARRARD, Judge.

This appeal, which comes to us to relieve a disparity in case load among the districts, arises from the sale of a truck engine. The seller, National Fleet Supply, Inc. (National), is engaged in the business of rebuilding and selling diesel engines and is located in Muncie, Indiana. The buyer, Larry J. Fairchild, owns a commercial refuse hauling business in Frankenmuth, Michigan. Fairchild needed a replacement engine for one of his trucks. In response to an advertisement by National in a trade journal, he telephoned National to determine if it stocked the one he needed. In that call Fairchild identified the make and model of both his truck and his engine. National said it had such an engine.

Fairchild then drove to National's place of business and signed a purchase order for a Cummins NT 270 long block diesel engine. The purchase price was $1,995.00 plus a core charge of $1,500.00,[1] for a total of $3,495.00.

When Fairchild returned to Michigan to have the engine installed a mechanic in Saginaw told him that the engine was a model 250, not a model 270, and that it could not be used in Fairchild's truck.

The parties disagreed about the course of events that followed, but the trial court established the facts in its special findings. Fairchild called National to notify it of the problem and was told by Ray Hockersmith, National's president, that his money would be refunded when he returned the engine. Fairchild then had his old engine repaired in Saginaw, and about two months after the purchase Fairchild's father returned the engine to National. Hockersmith gave the elder Fairchild a credit memorandum which also served as a receipt. This memorandum was silent as to any dollar amount because National wished to inspect the engine before refunding Fairchild's money. Subsequently, National sent Fairchild a copy of the same credit memorandum but which now contained the amount credited ($3,079.50)[2] and indicated that the credit issued was to be applied "against future purchases." This arrangement was not satisfactory with Fairchild, and he requested that his purchase price be refunded. National refused and Fairchild filed suit.

In his complaint Fairchild alleged that National had breached its contract and sought recovery of the purchase price of the engine, pre-judgment interest, and incidental and punitive damages. Following trial without a jury, the trial court entered judgment in favor of Fairchild for the purchase price ($3,495.00) with 8% interest from the date the engine was returned to the date of judgment, for $204.00 as incidental damages,[3] and for $1,000 as punitive damages. National timely perfected its appeal.

National raises three issues:

---

1. A core charge is levied until the buyer provides National with a used engine that can be rebuilt and sold. When a used engine is provided the core charge is returned.

2. National arrived at this figure by deducting from the purchase price charges for handling and restoration which were allegedly necessary to restore the engine to its original condition.

3. The incidental damages consisted of mileage incurred by Fairchild on his two round trips from Frankenmuth to Muncie, a total of 1,200 miles @ 17¢ per mile. National does not appeal the award of incidental damages and pre-judgment interest except to the extent that they are dependent upon the judgment for damages.

(1) Was the trial court's determination that Fairchild was entitled to recover the purchase price due to National's breach of the sales contract unsupported by the evidence?

(2) Was the trial court's determination that Fairchild was entitled to recover the purchase price contrary to law due to Fairchild's failure to provide National with an opportunity to cure its defective performance?

(3) Was the trial court's award of punitive damages against National contrary to law?

ISSUE 1:

At trial Fairchild filed a request for findings of fact and conclusions of law as permitted by Indiana Rules of Procedure, Trial Rule 52(A). National now argues that these findings are incorrect and that the judgment is therefore not supported by the evidence. Specifically, National asks us to find that the trial court incorrectly found that National did not furnish Fairchild with the engine he ordered.

■ On review we will not set aside a trial court's findings unless they are clearly erroneous. Trial Rule 52(A) and Appellate Rule 15(N). We will construe the findings liberally in support of the judgment and will consider them to be clearly erroneous only where, upon a review of the entire record, we are left with the definite conviction that a mistake has been made. *Citizens Progress Co. v. James O. Held & Co.* (1982), Ind.App., 438 N.E.2d 1016.

■ It is undisputed that Fairchild ordered an NT 270 diesel engine, but the evidence conflicted regarding the model he actually received. National's president testified that the engine Fairchild returned was exactly the model he ordered, but Fairchild's Saginaw mechanic testified that the engine was a model 250, not a 270. This dispute was for the trial judge to resolve as

the trier of fact, and he chose to believe Fairchild's witness. As a reviewing court we are directed to give due regard to the opportunity of the trial court to evaluate evidence, *Citizens Progress, supra,* 438 N.E.2d at 1022, and to judge the credibility of the witnesses, TR 52(A). We are not convinced that a mistake has been made. The record discloses sufficient evidence to support the trial court's finding that National delivered the wrong engine and thereby breached the sales contract.

ISSUE 2:

■ National argues that the trial court erred in entering judgment in favor of Fairchild on the purchase price because Fairchild failed to give National an opportunity to cure its defective performance. We affirm the trial court's judgment.

The transaction between National and Fairchild was a sale (IC 26–1–2–106) of goods (IC 26–1–2–105) and thus lies within the scope of the Uniform Commercial Code (IC 26–1–1–102). The general obligations of both buyer and seller are identified in IC 26–1–2–301: "The obligation of the seller is to transfer and deliver and that of the buyer is to accept and pay in accordance with the contract." Tender of delivery requires that the seller put conforming goods at the buyer's disposition, IC 26–1–2–503. Where the goods or tender fail in any respect to conform to the contract, IC 26–1–2–601 grants the buyer the power to reject the goods.[4] To accomplish an effective rejection of non-conforming goods the buyer must reject them within a reasonable time after tender or delivery and must seasonably notify the seller of the rejection. IC 26–1–2–602.

We conclude that Fairchild has met each of these requirements. The trial court's findings of fact, which are supported by the record, establish that the engine National sold did not conform to the terms of the sales contract, that Fairchild refused to ac-

---

**4.** Despite the code's apparent insistence on perfect tender, it is generally understood that rejection is not available in circumstances where the goods or delivery fail in some small respect

to conform to the terms of the sales contract. *See* White & Summers, *Uniform Commercial Code (2d ed.),* Section 8–3, pp. 303–04.

cept the engine because it was not the model he ordered and would not work in his truck, and that Fairchild promptly notified National of the rejection.

National responds, however, that even when the buyer fulfills each of the requirements of Section 2–602 his right to reject a non-conforming tender is not absolute. Rather, National contends that IC 26–1–2–508 requires that the seller first be given an opportunity to cure the non-conformity; an opportunity it was not given because Fairchild had his old engine repaired before returning the non-conforming one. As a general principle we agree with National, see *Stephenson v. Frazier* (1980), Ind.App., 399 N.E.2d 794, *transfer denied* 425 N.E.2d 73. (Buyers' refusal to allow seller to cure defects prohibited rescission of contract.) Nevertheless, we conclude that National failed to fulfill the requirements that 2–508 imposes on a seller and hence is not entitled to the benefits of that section.

IC 26–1–2–508 provides:

"(1) Where any tender or delivery by the seller is rejected because non-conforming and the time for performance has not yet expired, the seller may seasonably notify the buyer of his intention to cure and may then within the contract time make a conforming delivery.

(2) Where the buyer rejects a non-conforming tender which the seller had reasonable grounds to believe would be acceptable with or without money allowance the seller may if he seasonably notifies the buyer have a further reasonable time to substitute a conforming tender."

Both subsections of 2–508 require that a seller who wishes to cure a non-conforming delivery must seasonably notify the buyer of his intention to do so.[5] IC 26–1–2–204 deals with the topic of time and states that "An action is taken 'seasonably' when it is taken at or within the time agreed or if no time is agreed at or within a reasonable time," and that "What is a reasonable time for taking any action depends on the na-

ture, purpose and circumstances of such action." Although these provisions are not as precise as we might wish, we believe that they, buttressed by the general outlook of the code, indicate that we should examine the seasonableness of National's notice of intent to cure with an eye toward commercial reasonableness.

From the findings of fact it is clear that the trial court accepted Fairchild's version of the facts concerning National's notice of intent to cure. Fairchild testified that when he telephoned National and informed it of the non-conformity, National's president told him to return the engine and get his money back. Nothing in this statement can be considered notice of an intent to cure. Despite the testimony of Ray Hockersmith to the contrary, it does not appear that National did anything to indicate that it intended to cure rather than give a cash refund even on the day the engine was returned. Although Fairchild's father was given a credit memorandum instead of cash, he was told the purchase money would be refunded after National had inspected the engine. National did not clearly indicate a desire to cure until it issued the second credit memorandum which stated that Fairchild's credit would be applied toward another purchase. This event occurred more than two months after the sale. Under the circumstances of the sale and rejection, we do not consider this to be "seasonable notice." We conclude that the trial court did not err in entering judgment in favor of Fairchild on the purchase price.

ISSUE 3:

National's final allegation is that the award of punitive damages was contrary to law. We are constrained to agree.

The only basis for the award set forth in the findings and conclusions entered by the court was that the "defendant converted plaintiff's money to its own use."

To sustain the award Fairchild argues that there was a conversion and cites au-

---

5. Because of our disposition of this issue we need not decide when the time for performance (2–508(1)) expires in a "one shot" transaction

or whether the seller would have "had reasonable grounds to believe [the non-conforming tender] would be acceptable." (2–508(2)).

thorities for the proposition that punitive damages may be awarded for that tort. *See, e.g., Jerry Alderman Ford Sales, Inc. v. Bailey* (1972), 154 Ind.App. 632, 291 N.E.2d 92, *reh. den.* 154 Ind.App. 632, 294 N.E.2d 617.

■ To constitute the tort of conversion there must be an appropriation of the personal property of another. *Howard Dodge & Sons, Inc. v. Finn* (1979), Ind.App., 391 N.E.2d 638.

■ Thus, where there is simply the refusal to pay a debt no action for conversion will lie. 18 Am.Jur.2d, *Conversion,* Section 10, p. 164 and cases cited therein. Fairchild argues that in *Bunger v. Roddy* (1880), 70 Ind. 26, our Supreme Court permitted an action for the conversion of money. That case is distinguishable, however, since there the defendant was entrusted with money to apply to a certain purpose. *See Rauh v. Stevens* (1899), 21 Ind.App. 650, 52 N.E. 997.

Here the funds were paid to National as purchase money and Fairchild had no further property interest in those particular funds. This is true, also, of the "core charge" since under the evidence it is clear that furnishing a "core" was simply an alternative way of paying a part of the purchase price. Fairchild had no duty to furnish a core. It was simply an option that would have reduced the cash price.

■ When Fairchild seasonably rejected and returned the engine, title to the engine was revested in National as a matter of law. IC 26-1-2-401(4). It was then liable to Fairchild for the purchase price and such other damages as Fairchild was entitled to. It was not, however, guilty of appropriating the personal property of Fairchild, and punitive damages were not awardable for conversion.

■ Fairchild argues that even so we should review the evidence to see if the punitive award was sustainable upon another basis. This we may not do since the court was obliged to base its judgment on its special findings. TR 52(D); *Miller v. Ortman* (1956), 235 Ind. 641, 136 N.E.2d 17.

The award of punitive damages is reversed. The judgment is otherwise affirmed.

Affirmed in part, reversed in part.

HOFFMAN, P.J., and STATON, J., concur.