Donald F. **KOPIS** and Mildred E. Kopis, Joint and Severally, and Northern Indiana Land, Inc., d/b/a Golden Age Manor Nursing Home, Appellants,

v.

Norman L. **SAVAGE** and Associates of Health Care, Inc., Appellees.

No. 4–485A94.

Court of Appeals of Indiana, Fourth District.

Oct. 23, 1986.

■■■■■■■■■■■■■■■■■■■■■

Timothy W. Woods, South Bend, for appellants.

Peter G. Mallers, II, Beers Mallers Backs Salin & Larmore, Fort Wayne, for appellees and cross appellees.

MILLER, Judge.

Donald F. Kopis and Mildred E. Kopis appeal from the judgment below in which the trial court found they had failed to return a $40,000 deposit given them by Norman Savage during negotiations involving the sale of a nursing home. The trial court originally awarded Savage the amount of the deposit plus 8% prejudgment interest, treble damages of $120,000 for conversion, $399,314 fraud damages and $250,000 punitive damages, attorney fees in the amount of $30,000, and costs in the amount of $1,345.91. The court later amended its judgment deleting the finding of fraud and accompanying damages, and the award of punitive damages. The court also found Savage was entitled only to treble damages of $120,000 for the conversion count. The court left the attorney fees and costs portion of its original judgment intact and recomputed the prejudgment interest arriving at a final award of $157,304.39.

In his appeal Kopis raises two issues:

1) Did his refusal to pay Savage the amount of the deposit constitute conversion so as to authorize treble damages pursuant to IND.CODE 34–4–30–1?

2) Was the court's imposition of a constructive trust as to the assets of both Mildred and Donald Kopis contrary to law?

Savage cross-appeals arguing the court was correct in its original judgment as to the findings of fraud and the award of punitive damages.

Because we cannot find any actionable conversion in this case, we reverse the trial court's award of treble damages, attor-

ney's fees and costs. We affirm the trial court in finding Kopis's actions do not constitute fraud under Indiana law. In light of our holdings on these two grounds, we find the remedies of attorney's fees and constructive trust were imposed erroneously; we therefore reverse the trial court's imposition of a constructive trust as well as its award of attorney's fees.

## FACTS

The trial court found that Donald I. Kopis and Mildred E. Kopis operated the Golden Age Manor Nursing Home, which is located in Mishawaka. Norman L. Savage entered into negotiations with Donald Kopis for the purchase of the nursing home and the real estate. These negotiations culminated in an oral agreement in which Kopis agreed to sell the business for one and one quarter million dollars.

On June 24, 1980, Savage presented Kopis with a personal check for $40,000, made payable to Golden Age Manor Nursing Home. When he received the check, Donald Kopis delivered a hand-written document to Savage which read:

"This document represents the receipt of Forty Thousand Dollars ($40,000.00) deposit on Golden Age Manor from Mr. Norman Savage. Should Mr. Savage not be able to obtain reasonable and ordinary financing for the purchase of said nursing home within 90 days, that is by September 24, 1980, the full amount will be refunded.

(S) Donald Kopis

Deposit is for the first option to buy. The Seller agrees to take the unit off the market for the specified 90 days.

(S) Donald Kopis"

This was the sole signed record of the transaction between Kopis and Savage.[1] The proposed purchase price of the property, $1,250,000, was not recorded in any document other than a proposed buy and sell agreement which was prepared by Savage but never signed by the parties.

Donald Kopis represented to Savage that he would assist Savage in securing financing for the purchase of Golden Manor. Despite these representations and the above receipt, Kopis negotiated with representatives of the other prospective purchasers and referred them to financial institutions during the 90 day option period. Kopis also instructed Waterford Mortgage to cease all efforts to obtain financing for Savage.

Savage and Kopis negotiated throughout and beyond the 90–day option period, but eventually the deal soured. On or before October 30, Savage demanded return of the $40,000 deposit. Kopis did not return the deposit despite Savage's demand.

The evidence is undisputed that Kopis comingled the $40,000 with his own funds. Kopis deposited Savage's $40,000 check in an account Kopis opened for Paw Paw Farms, Inc., an Indiana corporation wholly owned by Kopis. The money in the Paw Paw Farms account was paid out from the account by means of several checks which Mildred Kopis made out to Production Credit Association and Kaiser Agricultural Chemical who were joint and several creditors of Mildred Kopis and Donald Kopis.

## DECISION

### I. *Conversion*

Kopis argues his actions do not constitute conversion under IND.CODE 35–43–4–3 and consequently Savage is not entitled to recover treble damages, costs, and reasonable attorney's fees under IND.CODE 34–4–30–1.

I.C. 35–43–4–3 reads as follows:

"35–43–4–3 Conversion

Sec. 3. A person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion, a Class A misdemeanor."

I.C. 34–4–30–1 reads as follows:

1. We would note that neither party consulted either an attorney or real estate broker before preparing this receipt.

"34–4–30–1 Offenses against property; damages; costs; attorney's fee

Sec. 1. If a person suffers a pecuniary loss as a result of a violation of IC 35–43, he may bring a civil action against the person who caused the loss for:

(1) an amount not to exceed three (3) times his actual damages;

(2) the costs of the action; and

(3) a reasonable attorney's fee."

■ We first observe that a criminal conviction under I.C. 35–43–1–1 *et seq.* is not a condition precedent to recovery in a civil action brought under I.C. 34–4–30–1. *James V. Brink & ERB, Inc.* (1983), Ind. App., 452 N.E.2d 414; *American Leasing, Inc. v. Maple* (1980), Ind.App., 406 N.E.2d 333. One must only prove a violation of I.C. 35–43–1–1 *et seq.* by a preponderance of the evidence rather than beyond a reasonable doubt. *James, supra.*

■ Also, money may be the subject of an action for conversion. *Coffin v. Anderson* (1837), 4 Blackf. 395; *Bunger v. Roddy* (1880), 70 Ind. 26. However, the money must be capable of being identified as a special chattel. *Coffin, supra; Bunger, supra; see also,* 89 C.J.S. *Trover and Conversion* Sec. 23. It must be a determinate sum with which the defendant was entrusted to apply to a certain purpose. *Bunger, supra; see Rauh v. Stevens* (1899), 21 Ind. App. 650, 52 N.E. 997.

Kopis characterizes his actions as a refusal to repay a debt and argues no action for conversion will lie citing *National Fleet Supply, Inc. v. Fairchild* (1983), Ind.App., 450 N.E.2d 1015, 1019; *see also,* 89 C.J.S. *Trover and Conversion* Sec. 23, and cases cited therein. *National Fleet Supply* involved the sale of an engine by National which was later found by the buyer to be not suitable for the purpose intended. The buyer returned the engine and asked for the return of the purchase price. National instead sent a credit memorandum and indicated that the credit issued was to be applied against future purchases. This arrangement was not satisfactory with the buyer and he filed suit to recover his money.

Our court held that no conversion had occurred because the buyer had paid the funds to National as purchase money and had no further property interest in those particular funds. *National Fleet Supply, supra.* Kopis argues that Savage, like the plaintiffs in *National Fleet Supply, supra,* had no property interest in the $40,000 after he deposited it with Kopis.

■ We must agree. The agreement between Kopis and Savage as expressed by the written receipt is, at best, ambiguous. We are unable to find anything in the agreement which suggests Kopis was under any obligation to return *the specific* $40,000 which Savage had given him. The parties did not agree to set up an escrow account or to deliver the money to any third party for safekeeping. We can find nothing in the conduct of the parties or in the wording of the receipt which indicates the parties intended for Savage to retain any ownership or possessory rights in the $40,000.

Savage asserts the words "the full amount will be refunded" clearly establish his continued ownership of the money. We cannot agree. While these words might be read to create a debt which Kopis would owe Savage in the event Savage could not find adequate financing, they cannot, on their face, be read to require the return of the same funds. In the absence of a clearer statement of the parties' intention that Kopis separate the funds in some manner, and in the absence of a more specific identification of the funds to be returned, we cannot find a criminal conversion.[2]

---

2. We note the receipt does not comply with our statute of frauds.

In Indiana, a contract required by the statute of frauds to be in writing must be totally in writing to be enforceable. A contract which is partly written and partly oral is a parol contract, and does not satisfy the statutory requirement of a written contract. *Ward v. Potts* (1950), 228 Ind. 228, 91 N.E.2d 643, 645; *Sheldmyer v. Bias* (1942), 112 Ind.App. 522, 45 N.E.2d 347, 349–350. In this case the receipt was only a part of a predominately parol contract for the

The Illinois Court of Appeals reached the same result in *A.T. Kearney, Inc. v. Inca International, Inc.* (1985), 132 Ill.App.3d 655, 87 Ill.Dec. 798, 477 N.E.2d 1326. In *Kearney*, the plaintiff, A.T. Kearney, Inc. gave the defendant, Inca International, Inc., a certified check for $175,000 as an earnest money deposit for construction work to be performed by Inca International. Joseph Popp, an officer of Inca International, used a substantial portion of the money to pay personal debts. The Illinois court reasoned no conversion had occurred because Kearney had relinquished its legal rights to ownership and possession of the money when it had the deposit check certified by its bank. *Id.*

Our examination of *Kearney* convinces us there is no justification for limiting its rationale to those situations in which a deposit check is certified. While it is true that by having the check certified *Kearney* surrendered any right to own and possess the deposit money, it is just as true that, when Savage's depository bank honored the $40,000 in the normal course of business, Savage surrendered his right to own and possess the deposit money.

We might reach a different result if the parties had reached an agreement that the check was not to be negotiated, but there is nothing in the record which supports the existence of such an agreement. We therefore find that Savage surrendered all possessory and ownership rights in the $40,000 when his bank paid the money to Kopis. We must emphasize, however, that Kopis did incur an obligation to repay the debt which resulted when Savage was unable to procure financing for the sale; there is certainly no evidence that Savage intended to make a gift of the money to Kopis. Thus, we conclude the court's findings of fact relative to the $40,000 deposit are correct and undisputed. We find the court made an erroneous conclusion therefrom that a conversion occurred. Where a conclusion of law is clearly erroneously decided it must be set aside. *In re Warship of B.C.* (1982), Ind., 441 N.E.2d 208.

■ While we cannot affirm the trial court's award of treble damages for conversion, as an appellate court we can direct final judgment when it would not be impracticable or unfair to either of the parties to do so. Ind.Rules of Procedure, Appellate Rule 15(N). Here, we direct the trial court to reinstate its judgment of $40,000 and prejudgment interest in favor of Savage.

■ The record reveals the trial court initially awarded Savage $40,000 on his claim for money had and received[3] and $120,000 on his claim for conversion. After Kopis filed his motion to correct errors, the trial court realized it could not award both items of damages and chose to delete the money had and received. The trial court's judgment in favor of Savage on the money had and received claim is clearly supported by the court's findings of fact. Rather than burden the trial court with extensive additional proceedings, we therefore direct judgment in favor of Savage in

sale of land. The purchase price and other terms of the agreement were never reduced to writing. This agreement must be considered a parol land sale contract and its terms, even those terms which were reduced to writing, are rendered unenforceable by the statute. *Wertheimer v. Klinger Mills, Inc.* (1940), 216 Ind. 481, 25 N.E.2d 246, 249, 129 A.L.R. 1226.

Thus, we have neither an escrow document in which Savage specifically retains an ownership interest in the money nor do we have an enforceable land contract which would have governed his interest in the money. *See In re Alexander* (1981), Bankr.D. Oregon, 19 B.R. 149.

3. Money had and received is an action which "can be maintained in all cases where the de-

fendant holds money of the plaintiff which in equity and good conscience be ought to repay." *Indiana Business College v. Cline* (1918), 187 Ind. 59, 119 N.E.2d 712, 713; *accord Harrold v. Markin* (1969), 145 Ind.App. 619, 252 N.E.2d 159, 161; *Horka v. Wieczorek* (1917), 64 Ind. App. 387, 115 N.E.2d 949, 950. To maintain this type of action, then, it is necessary to show the defendant received money to the use and benefit of the plaintiff. Here, Savage gave Kopis $40,000 and received no consideration in return. This gratuitous transfer was not meant to be a gift is apparent from the trial court's findings the transfer created a debt which Kopis owed Savage. Kopis cannot in good conscience refuse to return the money.

the amount of $40,000 be entered. We also direct judgment for prejudgment interest. Finally, we reverse the award of attorney's fees under I.Cl. 34–4–30–1 since there was no conversion under I.C. 35–43–4–3.

## II. *Fraud*

In his cross-appeal Savage argues the court's modification of its original order in which it deleted the findings of fact is contrary to law and to the evidence. Savage also argues the trial court erred in not awarding him lost profits and punitive damages.

The trial court originally decided that the Kopises had defrauded Savage but later modified the judgment deleting that finding. The trial court characterized the Kopis's actions as broken promises for future acts and held that an action for fraud will not lie for misrepresentations of what is to happen in the future.

██ Our examination of the record indicates the trial court's conclusion is supported by sufficient evidence. In Indiana, actionable fraud arises from false representation of past or existing facts, not from representations as to future action or future conduct. It cannot be based on broken promises, unfulfilled predictions, or statements of existing intent which are not executed. *Sachs v. Blewett* (1933), 206 Ind. 151, 185 N.E.2d 856; *Whiteco Properties, Inc. v. Thielbar* (1984), Ind.App., 467 N.E.2d 433; *Rempa v. LaPorte Production Credit Ass'n* (1983), Ind.App., 444 N.E.2d 308; 14 I.L.E. *Fraud* Sec. 17 (1959).

██ The evidence showed that Kopis promised to help arrange financing and to take the nursing home off the market for 90 days. The trial court concluded these statements were not misrepresentations of existing fact, but promises of future conduct for which an action of fraud will not lie. We cannot say this conclusion was clearly erroneous and affirm the trial court's amendment of its original judgment so as to delete the finding of fraud.

The trial court also originally awarded Savage lost profits as a measure of damages based on Kopis' supposedly fraudulent acts. As we stated above, the trial court was within its discretion in deciding there was no actionable fraud. Consequently there is no basis for an award of lost profits.

 Savage also argues that the trial court erred in failing to award him exemplary damages. In Indiana, exemplary damages may be granted where there is clear and convincing evidence of malice, fraud, gross negligence, or oppressive conduct. *Perry v. Leo Knoerzer Corp.* (1984), Ind.App., 472 N.E.2d 223. Even when such a showing is made, the plaintiff must introduce evidence tending to show that the tortious conduct was not the result of a mistake of law or fact, an honest error of judgment, overzealousness, or mere negligence before exemplary damages are appropriate. *Travelers Indemnity Co. v. Armstrong* (1982), Ind., 442 N.E.2d 349; *Perry, supra.* Here, the trial court found no fraud and no bad faith. We cannot justify an award of punitive damages in the absence of fraud, conversion, or wilfull misconduct. Therefore, we must reverse the trial court's award of punitive damages.

## III. *Constructive Trust*

██ The trial court improperly imposed constructive trust on the property of the defendants. In Indiana, fraud, either actual or constructive, is a prerequisite to the imposition of a constructive trust. *Brown v. Brown* (1956), 235 Ind. 563, 135 N.E.2d 614, 616–617; *Hall v. Department of State Revenue* (1976), 170 Ind.App. 77, 351 N.E.2d 35, 38. We will find a constructive trust only where there has been a breach of confidential or fiduciary relationship. *Hunter v. Hunter* (1972), 152 Ind. App. 365, 283 N.E.2d 775, 779, clarified 156 Ind.App. 187, 295 N.E.2d 834; *Hall, supra*, 351 N.E.2d at 38.

As noted earlier, the trial court correctly found that there was no actual fraud in this case. There was no evidence that Kopis and Savage were in any kind of fiduciary or confidential relationship. Indeed,

the record establishes that the two were engaged in an arms length real estate transaction. There was no constructive fraud here. In the absence of actual or constructive fraud the trial court erred in imposing the constructive trusts.

### Conclusion

Because we find no conversion, we reverse the trial court's award of treble damages and attorney's fees. However, because we find Savage pleaded a meritorious cause of action in money had and received, we affirm the trial court's judgment insofar as it awards the return of the $40,000 plus prejudgment interest. We affirm the trial court in its finding that there was no fraud, but we reverse its imposition of a constructive trust.

Affirmed in part, reversed in part, and judgment modified.

YOUNG and GARRARD, JJ., concur.