

IN THE

# Indiana Supreme Court

Supreme Court Case No. 26S-PL-111

## Keith D. Harper,

*Appellant-Defendant,*

FILED

Apr 09 2026, 9:31 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



–v–

## S&H Leasing, LLC; K&K Real Estate Holdings, LLC; Thomas Hagen; Brian Brisco; and Jeremy Noetzel,

*Appellees-Plaintiffs.*

Argued: December 4, 2025 | Decided: April 9, 2026

Appeal from the Elkhart Superior Court
No. 20D02-2108-PL-200
The Honorable Stephen R. Bowers, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 24A-PL-1606

**Opinion by Justice Slaughter**

Chief Justice Rush, and Justices Massa, Goff, and Molter concur.

**Slaughter, Justice.**

The Crime Victim's Relief Act allows trial courts to award treble damages to victims of certain criminal offenses in a civil claim against the wrongdoer. To prevail under the CVRA, a plaintiff must prove the defendant committed all elements of the criminal offense. Here, the parties dispute whether Defendant committed criminal conversion of money. Under the plain text of the criminal-conversion statute, all agree he did. But, for purposes of the CVRA, Defendant argues there is an extra element unique to conversion cases—disputed funds must be "special chattel", i.e., a determinate sum entrusted to the defendant for a certain purpose.

We hold that money need not be "special chattel" for criminal conversion or, what follows, for civil claims under the CVRA. The definition of a crime is limited to its statutory elements. The special-chattel requirement is not an element of the criminal-conversion statute. Thus, we affirm the trial court's judgment awarding treble damages and remand with instructions.

I

A

In 2008 and 2009, Keith Harper organized two companies with his then-wife, Kathryn Summers: S&H Leasing, LLC, which buys and sells used vehicles to consumers; and K&K Real Estate Holdings, LLC, which owns S&H's real estate. Harper hired Brian Brisco in 2014 and Thomas Hagen in 2015; both helped expand S&H into a large and profitable retail operation.

Harper and Summers rewarded S&H's success by gifting Hagen five shares and Brisco three shares of S&H. In 2017, Hagen and Brisco bought additional shares of both LLCs, after which Harper owned 34% of the LLCs; Hagen and Brisco each owned 33%; and Summers no longer owned any shares. Under the operating agreements, Harper remained the sole manager of both LLCs and had "full and complete power and authority to make all decisions and to take all actions incident to the management and conduct of the [LLCs'] business and affairs".

In 2020, Harper sold 10% of his ownership in the LLCs to Jeremy Noetzel, another employee of S&H and a certified public accountant who prepared tax returns for the two LLCs. Beginning in 2021, the relationship between Harper, on one hand, and Hagen, Brisco, and Noetzel, on the other, fractured. Harper became "more and more volatile". He came to work intoxicated, damaged company property, and was confrontational with employees. Hagen, Brisco, and Noetzel met with Harper and voted to amend the LLCs' operating agreements, remove Harper as a manager, force him to sell his shares in the LLCs, and terminate his employment with S&H. Harper refused to sell his shares and did not attend the closing for the sale of his ownership interests.

In August 2021, Hagen, Brisco, Noetzel, and the LLCs sued Harper in the Elkhart Superior Court, alleging that he breached the LLCs' operating agreements, and asking the court to issue a declaratory judgment that the operating agreements required Harper to sell his remaining 24% ownership interest to Hagen, Brisco, and Noetzel.

B

During discovery, Plaintiffs uncovered a real-estate transaction from January 2017 between K&K and RBS Properties, LLC, a third-party property management company. In the transaction, Harper leveraged K&K's real-estate holdings to borrow $55,000 from RBS to buy a piece of real estate. At the same time, he mortgaged K&K's assets to borrow an additional $275,000 in cash from RBS. Hagen and Brisco were unaware of the cash loan, though they were both members of K&K at the time. After transfer fees, Harper transferred the cash loan, amounting to $273,787, to K&K's bank account. Harper then wrote two checks: $173,787 to his personal home-equity line of credit with PNC Bank and $100,000 to S&H Leasing to an account named "Accounts Payable K&K". Then, throughout 2017, Harper transferred the $100,000 for his personal use and benefit, and he never repaid K&K the $273,787.

Once Plaintiffs discovered the cash loan with RBS, as well as Harper's transfer of the funds to his personal line of credit, they amended their complaint. Plaintiffs brought additional claims of breach of fiduciary duty, unjust enrichment, fraud, and theft. Plaintiffs alleged that Harper stole

these funds for his personal use, and that he never notified Plaintiffs of the loan and never properly recorded the loan in the LLCs' books. S&H also sought treble damages and attorneys' fees under the CVRA.

After a two-day bench trial, the trial court issued its findings of fact and conclusions of law. The court found for Plaintiffs on their claims under the CVRA, breach of fiduciary duty, and unjust enrichment. It noted that Harper used the $273,787 "to pay off personal debts, including substantial gambling debts that caused his personal line of credit at PNC to be either maxed out or nearly so". Because Harper "used company assets to pay his personal obligations, without informing the other members of the LLCs and without obtaining proper authorization", he breached his fiduciary duty as manager of the LLCs. The court "conservatively characterize[d] Harper's action as a Criminal Conversion", which is sufficient for treble damages under the CVRA. The court entered judgment against Harper for $821,361, which represented "treble damages for the conversion of $273,787," as well as costs and attorneys' fees.

Harper appealed the trial court's order, and our court of appeals affirmed in part and reversed in part in a precedential opinion. *Harper v. S&H Leasing, LLC, et al.*, 260 N.E.3d 960 (Ind. Ct. App. 2025). A majority of the panel was "obligated to agree" with Harper that he did not commit conversion because Harper commingled the $273,787 with his own money, so the funds were not a separately identifiable chattel sufficient for conversion. *Id.* at 969. But the majority concluded that Harper committed theft—another CVRA-eligible offense—which does not require separately identifiable chattel, so it affirmed the trial court's judgment awarding treble damages under the CVRA. *Id.* at 970.

Judge Vaidik concurred in part and in the judgment, disagreeing with the majority only on Plaintiffs' CVRA claim. She agreed with the trial court that Harper's moving the K&K loan proceeds to his personal line of credit "satisfie[d] the statutory elements of criminal conversion", and she would eliminate the "segregation" requirement for conversion claims involving money. *Id.* at 976 (Vaidik, J., concurring). She also found the panel's conclusion that Harper committed theft, but not conversion, suspect because conversion is a lesser-included offense of theft. *Id.* at 977.

Harper sought transfer, which we grant today, ___ N.E.3d ___ (Ind. 2026), thus vacating the appellate opinion, Ind. Appellate Rule 58(A). We address only the CVRA claim and summarily affirm the court of appeals on the claims of breach of fiduciary duty and unjust enrichment. We note that our appellate court previously held that the existence of a purchase agreement did not necessarily preclude an unjust-enrichment claim. See *Coppolillo v. Cort*, 947 N.E.2d 994, 998–99 (Ind. Ct. App. 2011). But Plaintiffs did not claim unjust enrichment under this exception, and they did not challenge this claim on transfer to our Court.

## II

We affirm the trial court's judgment granting treble damages under the CVRA and remand to the trial court to modify its judgment to award treble damages to K&K. At issue is whether the trial court correctly found that Harper committed criminal conversion by taking business funds and contributing them to his personal line of credit. We must evaluate the longstanding practice in Indiana of requiring conversion claims of money to involve a "determinate sum with which the defendant was entrusted to apply to a certain purpose", often proved by the defendant's keeping the funds segregated from other accounts. See, e.g., *Clark-Silberman v. Silberman*, 78 N.E.3d 708, 715 (Ind. Ct. App. 2017) (citation omitted).

We proceed in three steps. First, we determine that criminal conversion of money does not require that the funds be special chattel or segregated from other accounts, distinguishing criminal conversion from the common-law tort of conversion. Next, we establish the limits and contours specific to criminal conversion—namely, the required mens rea, which distinguishes criminal conversion from ordinary breaches of contract and debtor-creditor disputes. Last, we apply the criminal-conversion statute to hold that Harper knowingly exerted unauthorized control over the disputed funds here.

## A

Under the CVRA, a person who "suffers a pecuniary loss as a result of" certain crimes "may bring a civil action against the person who caused the loss" and recover up to three times "the actual damages of the person

suffering the loss". Ind. Code § 34-24-3-1(1)(A); see also *Klinker v. First Merchants Bank, N.A.*, 964 N.E.2d 190, 193 (Ind. 2012). "An actual criminal conviction is not required for recovery [under the CVRA]; a claimant merely must prove each element of the underlying crime by a preponderance of the evidence." *Wysocki v. Johnson*, 18 N.E.3d 600, 606 (Ind. 2014) (quoting *Kesling v. Hubler Nissan, Inc.*, 997 N.E.2d 327, 334 (Ind. 2013) (alteration in original)).

The trial court found that Harper committed criminal conversion when he transferred the K&K loan to his personal line of credit. Criminal conversion is an eligible offense for a civil claim and treble damages under the CVRA. I.C. § 34-24-3-1. Harper claims he did not commit criminal conversion, and thus the trial court erred in awarding treble damages against him, because the K&K loan was not "special chattel"—i.e., a determinate sum that the defendant was entrusted to apply to a certain purpose.

We first define the crime of criminal conversion, including the history of the judicially imposed "special chattel" requirement for the conversion of money. We then do away with the "special chattel" requirement altogether as an antiquated condition untethered to the essential elements of criminal conversion as defined by our legislature.

1

By statute, criminal conversion occurs when a person "knowingly or intentionally exerts unauthorized control over property of another person". *Id.* § 35-43-4-3(a). Persons "exert control over property" if they "take, carry, drive, lead away, conceal, abandon, sell, convey, encumber, or possess" it. *Id.* § 35-43-4-1(a). Such control over property is unauthorized if exerted "without the other person's consent" or "in a manner or to an extent other than that to which the other person has consented". *Id.* § 35-43-4-1(b)(1), (2).

A person can convert any form of personal property, and our appellate court upholds findings and convictions of conversion for all kinds of property. See *Willis v. Dilden Bros., Inc.*, 184 N.E.3d 1167, 1175 (Ind. Ct. App. 2022) (well pump, plumbing equipment), trans. denied; *Snow v. State*, 137 N.E.3d 965, 968 (Ind. Ct. App. 2019) (semi-tractor), trans. and

cert. denied; *Auto Liquidation Ctr., Inc. v. Chaca*, 47 N.E.3d 650, 652–53 (Ind. Ct. App. 2015) (car, clothing, electronics). But in the specific context of the conversion of money, our court of appeals has held that "money may be the subject of an action for conversion only if it is capable of being identified as a special chattel." *Bowden v. Agnew*, 2 N.E.3d 743, 750 (Ind. Ct. App. 2014). Money is a "special chattel" only if it is "a determinate sum" that the "defendant was entrusted to apply to a certain purpose." *Ibid.* (quoting *Trietsch v. Circle Design Grp., Inc.*, 868 N.E.2d 812, 821 (Ind. Ct. App. 2007)).

The basis for treating conversion of money differently than that of other property is that money is often intangible and fungible, making it difficult to trace its true owner and to determine whether the defendant exerted unauthorized control over it. These features separate conversion claims involving tangible property—specific items like a car or animal—from intangible property. Our courts have used this "special chattel" requirement to distinguish between ordinary breaches of contract like debtor-creditor disputes and more egregious behavior like criminal offenses and intentional torts in civil cases. See, e.g., *id.* at 750–51. Other jurisdictions limit conversion claims to when money is tangible—i.e., when the plaintiff has a "right to a specific fund or specific money in coin or bills." *Sutherland v. O'Malley*, 882 F.2d 1196, 1200 (7th Cir. 1989) (quotation omitted) (applying Illinois law). Thus, courts here and elsewhere have allowed conversion claims involving tangible money, like cash, while excluding conversion claims of intangible money.

The seminal appellate case introducing this special-chattel requirement is *Kopis v. Savage*, 498 N.E.2d 1266 (Ind. Ct. App. 1986). There, a buyer submitted a deposit for the sale of property to the seller, with the express condition that the seller return the deposit if the buyer could not obtain financing. *Id.* at 1269. After the deal fell through, the seller refused to return the deposit, so the buyer sued for damages under the CVRA's predecessor statute. The court of appeals found the deposit was not special chattel because the seller was not "under any obligation to return **the specific** [deposit] which [the buyer] had given him", so the buyer did not "retain any ownership or possessory rights" in it. *Id.* at 1270 (emphasis in original). Because the buyer did not retain rights over the specific property, the seller's conduct was merely a breach of contract, not criminal conversion.

*Ibid.* Though *Kopis* did not establish a strict segregation requirement, the court relied on the fact that the seller commingled the deposit with his personal funds as evidence that the buyer retained no rights over the property. "The parties did not agree to set up an escrow account or to deliver the money to any third party for safekeeping." *Ibid.*

*Kopis* was an understandable attempt to distinguish ordinary civil disputes from property crimes. Over time, though, its definition of "special chattel" evolved into one that often turns on whether allegedly converted funds were segregated and placed into a separate account or commingled with other funds. For example, in *Clark-Silberman*, the defendant took $46,182 in cash from her late husband's and stepchildren's joint safe-deposit box and stored it in her own box at another bank. 78 N.E.3d at 712. When the defendant's stepchildren sued for conversion, the trial court awarded treble damages under the CVRA. *Id.* at 714. The court of appeals upheld the award because the case was "more akin to a situation where determinate sums were placed with a third party for safekeeping, or held in a separate fund or account". *Id.* at 716. Thus, while not every money-conversion case after *Kopis* depended on the location of the converted funds, whether the funds were segregated often proved dispositive, as shown by the opinion below. *Harper*, 260 N.E.3d at 969.

Next, we consider whether a plaintiff must prove this "special chattel" requirement to win a conversion claim involving money.

2

In Indiana, "no common-law crimes exist, and the legislature fixes the elements necessary for any statutory crime." *Knotts v. State*, 187 N.E.2d 571, 573 (Ind. 1963). What follows from this principle that only the legislature defines crimes is that the judicially imposed "special chattel" requirement is proper only if based in the text of the criminal-conversion statute. It is not. Under the statute, a person commits criminal conversion when he "knowingly or intentionally exerts unauthorized control over property of another person". I.C. § 35-43-4-3(a). The statute defines the offense to include both tangible and intangible property and does not differentiate between types of property converted. For a civil claim under the CVRA, a plaintiff need only show that the defendant committed the statutory

elements of the offense. See *id.* § 34-24-3-1. By its terms, the criminal-conversation statute extends to money that is not a determinate sum entrusted to the defendant for a certain purpose, and there is no requirement that the funds be segregated from other monies. Thus, the additional requirement that converted funds be a "special chattel" conflicts with the plain text of both the criminal-conversion statute and the CVRA.

Further, adopting a special-chattel requirement conflates a common-law element stemming from the **tort** of conversion with the **crime** of conversion. *Kopis* referenced two cases from our Court to establish that money may be the subject of an action for conversion only if it is special chattel. 498 N.E.2d at 1270 (citing *Bunger v. Roddy*, 70 Ind. 26 (1880), and *Coffin v. Anderson*, 4 Blackf. 395 (Ind. 1837)). *Coffin* was a civil action for trover, which is the common-law antecedent to today's tort claim for conversion. *Coffin*, 4 Blackf. at 396; see also Restatement (Second) of Torts § 222A (1965). We held in *Coffin* that "it is only for the conversion of specific goods that trover will lie. The proper and, indeed, the only remedy for the creditor, in the case of a general deposit, if payment be refused, is an action of **debt** or **assumpsit**". 4 Blackf. at 403–04 (emphasis in original) (citation omitted). And in *Bunger*, we affirmed that the common-law tort of conversion covers money when the defendant "fail[s] to apply the money to the purpose for which it was entrusted to him, but converted the same to his own use". 70 Ind. at 28. Thus, under our longstanding precedent, the "special chattel" requirement stems from the common-law tort of trover.

The legislature, though, did not fashion **criminal** conversion after the civil tort of conversion, but after the crime of theft. A person commits theft who "knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use". I.C. § 35-43-4-2(a). The legislature thus differentiates the two crimes by the scienter required to commit the offense, not by whether the disputed funds were segregated or entrusted to the defendant for a specific purpose. In practice, then, the special-chattel requirement conflates the tort of conversion with criminal conversion and adds an element to the criminal offense that the legislature did not.

Imposing a special-chattel requirement on criminal conversion has led to two perverse outcomes. First, as Judge Vaidik noted in the opinion below, it imposes an additional requirement on conversion that theft does not have, though we have consistently held that "[c]riminal conversion is a lesser included offense of theft." *Wojtowicz v. State*, 545 N.E.2d 562, 563 (Ind. 1989); *Harper*, 260 N.E.3d at 977. The practical effect of the special-chattel requirement is to impose an additional element on a lesser-included offense that the greater offense does not have, turning our understanding of included offenses on its head.

Second, the special-chattel requirement incentivizes further wrongdoing by defendants. As discussed above, *supra*, at 8, the special-chattel analysis often turns on whether the defendant kept the converted funds separate from, or commingled them with, his other personal property. "Such a rule gives the alleged converter control over whether certain funds are subject to conversion because, depending on the type of account he chooses to place the funds, the funds may or may not be subject to conversion." *Roderick Dev. Inv. Co. v. Cmty. Bank of Edgewater*, 668 N.E.2d 1129, 1137 (Ill. App. Ct. 1996). In other words, focusing on whether the funds were segregated punishes "the punctilious thief, who separates his ill-gotten gains from his legitimate ones, while letting an individual less concerned about bookkeeping off the hook." *Ford Motor Credit Co. v. Fincannon Ford, Inc.*, Cause No. 1:19-CV-502-HAB, 2021 WL 1379941, at *7 (N.D. Ind. Apr. 12, 2021). The CVRA is meant to deter criminals, not to push them to mix converted funds with their personal accounts.

In sum, we reject the special-chattel requirement as an element of a criminal-conversion claim involving money. Relevant here, plaintiffs bringing conversion claims under the CVRA need only prove the offense's statutory elements.

B

Though we rescind the judicially imposed "special chattel" requirement in criminal-conversion cases, this change does not expand damages under the CVRA to mere breaches of contract or failures to pay a debt. As our court of appeals has observed, "refusal to pay a debt will not generally support a conversion claim", *Bowden*, 2 N.E.3d at 750, and the

"legislature did not intend to criminalize bona fide contract disputes." *French-Tex Cleaners, Inc. v. Cafaro Co.*, 893 N.E.2d 1156, 1168 (Ind. Ct. App. 2008). We agree.

The CVRA's pecuniary-loss provisions are meant to cover only criminal conduct, not ordinary civil disputes. "[I]n enacting the [CVRA], the legislature intended for it to serve as a deterrent to would-be criminals by increasing the financial risk and potential liability stemming from the commission of a property crime." *Benaugh v. Garner*, 876 N.E.2d 344, 349 (Ind. Ct. App. 2007), trans. denied. Potential treble damages and attorneys' fees create a strong incentive for plaintiffs to shoehorn a garden-variety civil dispute into a criminal offense under the CVRA. See *Greg Allen Const. Co. v. Estelle*, 798 N.E.2d 171, 173 (Ind. 2003) (recognizing the incentive to frame breaches of contract as torts). But the CVRA is limited to defendants who commit an eligible criminal offense in which the plaintiff is a victim.

The limiting principle in cases like this one, though, is not the segregation of money or whether the funds were entrusted to the defendant for a certain purpose; it is the mens rea. The tort of conversion is the "appropriation of personal property of another to the tortfeasor's own use and benefit, to the exclusion of and in defiance of the owner's rights, under an inconsistent claim of title". *Ind. & Mich. Elec. Co. v. Terre Haute Indus., Inc.*, 507 N.E.2d 588, 610 (Ind. Ct. App. 1987), trans. denied. Mens rea is not an essential element of the tort of conversion, so "even if the tortfeasor acted in good faith in assuming dominion over the property, such is no defense." *Ibid.* For criminal conversion, then, good faith is a defense because the offense requires criminal intent: "It is this mens rea requirement that differentiates criminal conversion from the more innocent breach of contract or failure to pay a debt—situations the criminal conversion statute was not intended to cover." *Larson v. Karagan*, 979 N.E.2d 655, 661 (Ind. Ct. App. 2012).

Criminal conversion occurs when a person "knowingly or intentionally exerts unauthorized control over property of another person". I.C. § 35-43-4-3(a). A person acts "intentionally" if, "when he engages in the conduct, it is his conscious objective to do so." I.C. § 35-41-2-2(a). And a person engages in conduct "knowingly" if, "when he engages in the conduct, he is

aware of a high probability that he is doing so." *Id.* § 35-41-2-2(b). Generally, this mens rea requirement will serve as a bar to finding criminal conversion in ordinary breaches of contract, as the plaintiff will be unable to show that the defendant's conduct was to exert unauthorized control over the plaintiff's property intentionally or knowingly.

Many cases establish the distinction between an ordinary contract dispute and the criminal intent necessary for criminal conversion. For example, in *Catellier v. Depco, Inc.*, 696 N.E.2d 75 (Ind. Ct. App. 1998), the plaintiff contracted to buy a hydraulic pump. The buyer found the pump to be damaged, so it returned the pump; the seller refused to refund the full amount, alleging the buyer damaged the pump during installation. *Id.* at 77. The buyer sued for conversion. The court of appeals found the seller did not have criminal intent when it refused to refund the purchase price because it "believed it was entitled to retain" the funds. *Id.* at 78. Thus, the buyer's only remedy was in a breach-of-contract claim. *Ibid.*; see also *French-Tex*, 893 N.E.2d at 1167–68 (holding that defendant did not have mens rea for conversion by keeping property-tax credit because contract was ambiguous and defendant reasonably believed it could keep the credit).

Neither does today's opinion extend criminal conversion to typical disputes between a debtor and creditor. The failure to pay a debt "does not constitute criminal conversion as a matter of law." *Tobin v. Ruman*, 819 N.E.2d 78, 89 (Ind. Ct. App. 2004), trans. denied. Unlike most property crimes, commercial transactions generally involve the transfer of property voluntarily. See *Roderick*, 668 N.E.2d at 1135. In such cases, the creditor does not own the property; it merely possesses a legal right to repayment. Thus, the debtor's failure to pay the debt is not "unauthorized control over [the creditor's] property". I.C. § 35-43-4-3(a). "An assertion that a debtor knowingly failed to pay what he owed, without more, is insufficient as a matter of law to prove conversion." *CT102 LLC v. Auto. Fin. Corp.*, 175 N.E.3d 869, 874 (Ind. Ct. App. 2021). Thus, a creditor's right to recover from the debtor does not arise from the debtor's conversion of the creditor's property but from the debtor's breach of the parties' agreement.

In sum, there is no "special chattel" requirement in criminal-conversion cases involving money, which means there is likewise no such requirement for civil claims under the CVRA. Instead, the plaintiff must prove every element (and only those elements) of the criminal-conversion statute, including criminal intent.

## C

Finally, we consider whether the trial court correctly found that Harper knowingly exerted unauthorized control over Plaintiffs' property. When a case is tried to the bench, the court enters findings of fact and conclusions of law under Trial Rule 52. On appeal, we "consider whether the evidence supports the trial court's findings" and will not set them aside "unless they are clearly erroneous—i.e., the record contains no facts supporting them either directly or inferentially." *Town of Brownsburg v. Fight Against Brownsburg Annexation*, 124 N.E.3d 597, 601 (Ind. 2019). Then, we consider "whether the findings support the court's legal conclusions. We give no deference to conclusions of law but review them de novo." *Ibid.*

The trial court's extensive factual findings are amply supported by the evidence introduced at trial. Plaintiffs showed that Harper, acting as manager of K&K and S&H, obtained a loan of $275,000 from RBS Properties, LLC. Harper then took the $273,787 loan, after costs, and distributed it over time to his own personal line of credit and to eliminate his accounts receivable with S&H. He did not discuss the loan with Hagen or Brisco, even though the two were each one-third members of K&K at the time. Harper did not sign a promissory note or otherwise account for the cash transfer as a loan owed to the business. And he never told Plaintiffs about the transfer at any time; they discovered it only after suing and conducting discovery in this case.

Harper claims he used the cash transfer to restructure debt in the LLCs and pay off the line of credit he used on business expenses, but the trial court found that "the evidence introduced at trial did not support this allegation." The LLCs' balance sheets showed no indebtedness to Harper at the time of the cash transfer. His line-of-credit balance with PNC Bank was nearly the same as the amount he arranged to borrow from RBS before he transferred the proceeds over time to himself. All this evidence led

the trial court to conclude that Harper knowingly exerted unauthorized control over the cash loan and converted it criminally when he transferred the funds to his personal accounts.

*     *     *

For these reasons, we affirm the trial court's judgment under the CVRA with one modification. Though the trial court awarded treble damages under the CVRA to S&H, the victim of Harper's conversion was K&K; it was K&K that borrowed the funds Harper transferred to his personal accounts. Thus, we remand to the trial court to revise its judgment to award treble damages to K&K, not S&H. And we summarily affirm the court of appeals' opinion affirming the trial court's judgment on breach of fiduciary duty and reversing it on unjust enrichment.

Rush, C.J., and Massa, Goff, and Molter, JJ., concur.

ATTORNEY FOR APPELLANT
Adam J. Sedia
Johnson & Bell, P.C.
Crown Point, Indiana

ATTORNEYS FOR APPELLEE
James M. Lewis
Elizabeth A. Klesmith
THK Law, LLP
South Bend, Indiana