395 N.E.2d 257 (1979)
Arthur P. GUMZ, Frederick Gumz and Paul Gumz, Appellants,
v.
STARKE COUNTY FARM BUREAU COOPERATIVE ASSOCIATION, Inc., an Indiana Corporation, Pulaski County Farm Bureau Cooperative Association, Inc., an Indiana Corporation, La Crosse Grain Company, Inc., an Indiana Corporation, and Smolek Grain, Inc., an Indiana Corporation, Appellees.
No. 1079S278.
Supreme Court of Indiana.
October 11, 1979.
*259 Paul Reed, Knox, B. Patrick Maloy, North Judson, for appellants.
Thomas B. Dumas, Rensselaer, Edward L. Volk, LaPorte, for appellees.
GIVAN, Chief Justice.
This cause comes to us on a petition to transfer from the Third District of the Court of Appeals. We hereby grant transfer for the purpose of clarifying the opinion of that court. 383 N.E.2d 1061.
The appellees operated grain elevators. As a regular part of their business, they executed contracts with local farmers for the purchase of grain. Appellants are farmers who till in excess of 4,000 acres. Arthur Gumz, father of Frederick and Paul Gumz and the owner of the farm, runs the farm as a sole proprietorship. His sons were essentially his employees, although they both planted several hundred acres themselves. During the years 1972-73, the appellants executed 25 contracts for the sale of grain, 23 of which were signed on or on behalf of Arthur Gumz. One contract was signed by Frederick Gumz in his own behalf, and one contract was signed by Paul Gumz in his own behalf. The appellees brought this suit against the appellants alleging a conspiracy on the part of appellants to defraud the grain companies by contracting to sell more grain than they could produce, intending to honor only those contracts which were profitable and to breach those contracts which were unprofitable. The grain companies sought recovery of actual and consequential damages flowing from the breach of these contracts.
Following discovery, the parties filed motions for summary judgment. The trial court rendered judgment in favor of the grain companies on each of their individual contracts with the appellants.
In the Court of Appeals the appellants raised a number of issues, one of which was the consideration by the trial court of depositions which had not been published at the time judgment was rendered. The Court of Appeals erroneously implied that depositions need not be published and erroneously stated that the trial court would have erred had it failed to consider these depositions *260 when ruling on the motions for summary judgment. It is our opinion that the trial court did err in considering the unpublished depositions, but that this error was cured by their subsequent publication, with the consent of the parties. We therefore will clarify the decision of the Court of Appeals with respect to the publication of depositions and will adopt the remainder of that court's opinion.
Numerous depositions were taken in this case. As a result of these depositions and other affidavits, documents and admissions, the parties filed motions for summary judgment. In their briefs to the court in support of their motions, the parties cited deposition testimony and seemed to operate on the assumption that the depositions were properly before the court. No motion to publish was filed prior to the ruling on the summary judgment motion.
The requirement that a deposition be published has recently been reaffirmed by this Court in Augustine v. First Fed. Sav. & L. Ass'n of Gary (1979), Ind., 384 N.E.2d 1018. The nature and use of depositions in modern practice compels this conclusion. Under TR. 32(B), a party may permit objectionable matter to be explored during a deposition, but then may have his objection sustained when the deposition is published in the trial court. Absent the publication requirement, counsel would be required to make all objections to every question at the time the deposition is taken. This would impede the operation of discovery and would necessitate continuous consultation with a magistrate to obtain rulings on various questions and series of questions. It might even require the presence of a magistrate during the entire deposition.
Notwithstanding the fact that the depositions in the case at bar were not published at the time the summary judgment motions were submitted, the trial court stated in its judgment that "the Court has considered the deposition testimony of James Anderson, Warren Short, Clarence Lawrence, Joseph Smolek, Arthur P. Gumz, Paul Gumz and Patricia Good." The trial court erred in this regard. However, after the praecipe was filed, the court entered an order publishing the depositions, which order was "agreeable to all parties." No objection was lodged against this publication. Under these circumstances, the error of the trial court in considering the depositions before they were published has been cured by the court's subsequent order of publication and the parties' assent thereto. Hence, the depositions were properly considered by the Court of Appeals in rendering its decision. We have examined the record and find that the Court of Appeals has correctly decided the remaining issues in the case. We therefore adopt the following from the opinion of Judge Hoffman:
"Indiana Rules of Trial Procedure, Trial Rule 56(C) sets out the standard by which the trial court is guided in ruling on a motion for summary judgment:
"`... The judgment sought shall be rendered forthwith if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits and testimony, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law... .'" "The burden is on the proponent of summary judgment to demonstrate the absence of any genuine issue as to a material fact. All doubts and inferences are to be resolved in favor of the opponent of the summary judgment motion. Bassett v. Glock (1977), Ind. App., 368 N.E.2d 18, at 21.
"Appellants argue that the trial court should have granted their motion to separate the causes of action for purposes of trial and for all other purposes. As there was no trial, appellants' motion will be discussed only in terms of the separation of the causes for purposes of the summary judgment motion.
"The trial court denied the Gumzes' motion to separate on the basis of Ind.Rules of Procedure, Trial Rules 20(B) and 42(B). Gumzes argue that the Grain Companies should not have been permitted to join in one action because appellees did not meet the requirements of TR. 20(A): (1) that appellees assert a right to relief jointly, *261 severally or in the alternative in respect of or arising out of the same transaction, occurrence or series of transactions or occurrences and (2) that a question of law or fact common to all the parties will arise in the action.
"Appellants do not dispute that there are similar questions of law and fact common to all parties. But Gumzes argue that there is no right to relief arising out of the same transaction, occurrence or series of transactions or occurrences. Appellants cited no Indiana cases in their brief on this issue and we could find none. Since the Indiana TR. 20(A) is patterned after Federal Rule 20(a), the authorities on the latter are helpful in construing our Indiana rule. Rembold Motors, Inc. v. Bonfield (1973), 155 Ind. App. 422, at 439, 293 N.E.2d 210, at 220. Trial Rule 20(A) is generally given the broadest possible reading since it is still possible to protect the convenience of the parties and the court by use of TR. 20(B) and 42(B) providing for separate trials.
"A charge of conspiracy alleges a series of transactions related by a common purpose or intent and is usually sufficient to meet the requirements of TR. 20(A), permitting joinder of the claims arising from concerted action. Nassau City [County] Ass'n of Ins. Agts. Inc. v. Aetna Life & Cas. Co. (2nd Cir., 1974), 497 F.2d 1151, 1154. In Mesa Computer Utilities, Inc. v. Western Union Computer Utilities, Inc. (D.C.Del. 1975), 67 F.R.D. 634, four plaintiffs sued on separate contracts with defendant alleging a conspiracy to defraud. The court at 637 held:
"`... [W]hile it is recognized . . that plaintiffs' fraud and antitrust claims may eventually prove to have no factual or legal basis, it would be wholly premature to pass upon these arguments at this point in the litigation or in the context of the present motion.'
"Rule 20(a) does not require precise congruence of all factual and legal issues. Plaintiffs allege identical conspiratorial activity affecting each of them.
"Wide discretion is vested in the trial court as to the joinder of parties. And in the case at hand it is not discernible how the asserted misjoinder was prejudicial to appellants. The relatively straightforward contracts and the absence of complicated facts or relationships which might give rise to prejudice made joinder proper and desirable. See: Silverman v. Cinofsky (D.C.Ill. 1953), 15 F.R.D. 122, at 123.

* * * * * *
"The evidence which was available to the trial court shows that it is uncontradicted that the Gumzes signed the 25 contracts admitted into evidence and that at the time they were signed and until the suit was filed the Gumzes and the Grain Companies believed the contracts were binding upon them. This belief of the parties is evidenced by the fact that Gumzes delivered grain on some of the contracts and the Grain Companies honored many such deliveries where the contract price was higher than the market price at the time of said deliveries.
"The deposition testimony of the four grain elevator company employees showed that it was customary for farmers, and it was the procedure used by the Gumzes, to call in and ask the grain company if a certain price could be had for the sale of corn or soybeans. The farmer would ask the grain company to sell so many bushels at such a price for delivery at a date in the future. The grain company employee would then call the farmer back if he was able to sell the grain through his broker for the stated price and would tell the farmer to come in and sign the contract, now reduced to a writing. In presenting evidence as to damages, the Grain Companies showed that when such a contract was negotiated with a farmer, the grain company was committed by a second contract to sell the farmer's grain to a third party and that the Gumzes were aware of the fact that the Grain Companies would have to get the grain at market price to fill the contract they had executed with a third party if the Gumzes defaulted on the contract.
*262 "The contract forms utilized by the four Grain Companies were similar in content, each containing all the necessary terms of a contract for the sale of grain, i.e., the amount of grain, price per bushel, time and place of delivery. The forms of Smolek Grain, Inc., Pulaski and Starke Counties Farm Bureau Cooperative Assoc., Inc. were only signed by the seller of the grain while contracts of La Crosse Grain Company were signed by both buyer and seller. The contract form utilized by Smolek, Pulaski and Starke Counties grain companies is as follows:
 "No. ____ ____, 19__
"This is to certify that I, ____, have this day contracted and sold to ____, bushels of ____ at ____ cents per bushel (____ lbs. per bushel) to be clean, sound and dry and to grade No. ____ to be delivered into ____ elevator or cribs at ____ on or before the ____, day of ____, 19__.
"If damaged or inferior grain is delivered and accepted on this contract, the market difference at which such grain is selling under the contracted grade day of delivery shall be deducted from the contract price. Any extension of time to be at buyer's option. Any balance or overrun will be accepted only at the market price on day of delivery. Should elevator be full or incapacitated in any way, when grain is tendered, grain shall be delivered as soon thereafter as elevator can receive same.
"I certify that this grain is in my possession and free of all liens and encumbrances.
 "_______________________________
"Received of ____________________ DOLLARS
To apply on this contract
 "________________________________
"Appellants argue that the contract form is not a binding contract because the buyer had not promised to buy the grain. In response to appellees' request for admissions, appellants stated that the documents were an offer made by appellants which was not accepted by the appellees. But appellees furnished the form and, as pointed out by appellees, the second paragraph of the form assumes an obligation on the part of the buyer to buy the grain pursuant to the contract. The documents constituted valid contracts, imposing mutual obligations upon the grain company and the farmer.
"Contracts for the sale of goods are governed by the provisions of the Indiana Uniform Commercial Code. IC 1971, XX-X-X-XXX et seq. (Burns Code Ed.). IC 1971, XX-X-X-XXX(1) provides:
"`Formation in general.  (1) A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract.' "Appellees correctly contend that the conduct of the parties was such that it was clear and uncontradicted that both parties recognized the existence of a contract. Thus, even if the contract forms utilized herein had not been binding contracts the conduct of the parties would have made them binding contracts. Warrick Beverage Corporation v. Miller Brew. Co. (1976), Ind. App., 352 N.E.2d 496, at 500; Jos. Schlitz Brewing v. Central Bev. Co., Inc. (1977), Ind. App., 359 N.E.2d 566, at 575.
"Appellants argue that the correct measure of damages has not been presented and that the damages awarded were excessive. The affidavits filed by the Grain Companies establish the market price on the date the grain company learned of appellants' default. Appellees subtracted that amount from the contract price to arrive at their actual damages. This conforms to the measure of damages set out in IC 1971, XX-X-X-XXX(1):
"`Buyer's damages for nondelivery or repudiation.  (1) Subject to the provisions of this article [chapter] with respect to proof of market price (section [26-1-]2-723), the measure of damages for nondelivery or repudiation by the seller is the difference between the market price at the time when the buyer learned of the breach and the contract price together with any incidental and consequential damages provided in this article [chapter] *263 (section [26-1-]2-715), but less expenses saved in consequence of the seller's breach.'
"The affidavits filed by employees of each of the Grain Companies stated that they had personal knowledge of the market price on the day that the company learned of appellants' default on each individual grain contract. The measure of damages as set out above is the difference between the contract and market price and said evidence is unchallenged. As there is no genuine issue of fact, the trial court properly awarded the amounts set out in its decision and judgment rendered thereon that were denominated actual damages.
"Appellants also argue that there was a genuine issue of fact as to the incidental and consequential damages awarded to appellees, alleging that the evidence fails to establish that the Grain Companies suffered any such damages and even if they did suffer such damages, the evidence fails to establish what specific amounts they suffered as to each contract. The affidavits of the employees of the farm grain companies alleged incidental and consequential damages of 10 cents per bushel in all of the contracts breached by appellants except for one contract of Starke County Farm Bureau Cooperative Assoc., Inc. as to which damages of 15 cents per bushel were alleged.
"The sole evidence as to incidental damages is contained in the depositions of various employees of the Grain Companies. The evidence is vague and skimpy. Different figures were given including expenses for freight, shrinkage and profit. There is no uncontradicted evidence for any of the Grain Companies as to the exact damages for any one single contract. There is thus a genuine issue of fact as to the amount of consequential damages. As summary judgment was improperly granted on this issue, the cause must be remanded to the trial court for further proceedings as to this issue alone.
"Finally, the appellants argue that the trial court should have found that there was a question of fact as to whether the Grain Companies had credited or paid appellants for deliveries of grain made pursuant to the contracts. But the issue was not before the court at trial as the Gumzes failed to file a counterclaim for such amounts pursuant to Ind.Rules of Procedure, Trial Rule 13. Even if we could say that it was an issue before the trial court in the absence of a counterclaim, appellants have waived this issue by their failure to include it in their motion to correct errors. A mere allegation that the damages were excessive cannot be said to be specific enough to raise the issue of Gumzes' claim that they had not been paid or credited for specific deliveries of grain made to appellees. TR. 59(G); Macken v. City of Evansville (1977), Ind. App., 362 N.E.2d 202, at 203."
Transfer is granted, the opinion of the Court of Appeals is vacated and the judgment of the trial court is affirmed in all respects, except for the award of incidental and consequential damages. The cause is remanded to the trial court for further proceedings on that issue alone.
DeBRULER, HUNTER, PIVARNIK and PRENTICE, JJ., concur.