Roger Eugene WALDRON, Appellant (Plaintiff below),

v.

Earl WILSON and Max L. Wilson Appellees (Defendants below).

No. 34S02–8901–CV–17.

Supreme Court of Indiana.

Jan. 12, 1989.

Dan L. Clayton, Indianapolis, for appellant.

Daniel J. Gamble, Kokomo, for appellees.

PIVARNIK, Justice.

This cause comes to us on a petition to transfer from the Indiana Court of Appeals, Second District. Petition is brought by Plaintiff–Appellant Roger Eugene Waldron, who initially appealed the denial of his motion to amend his complaint. He claimed that under Ind.R.Tr.P. 15(C) his amended proposed complaint related back to the date of the filing of his original

complaint. The facts are accurately stated by the court of appeals as follows:

On October 14, 1980, Waldron was injured when he caught his foot in a corn drying auger while it was in operation on a farm located in Howard County, Indiana. On October 14, 1982, Waldron commenced this action against Max L. Wilson (Max) and Earl Wilson (Earl) [hereinafter collectively referred to as the Wilsons] for the negligent care and maintenance of the corn drying auger. The sheriff of Howard County served a summons and the complaint upon each of the Wilsons on October 15, 1982. The Wilsons filed an answer to the complaint on November 22, 1982. The answer contained an admission that the Wilsons owned the farming operation where Waldron was injured. However, on April 29, 1983, the Wilsons moved to amend their answer by asserting that the farming operation was in fact owned by Wilson Livestock Farms, Inc.

On May 17, 1983, Waldron moved to amend his complaint "to indicate that the farming operation at which the plaintiff was injured was owned by Wilson Livestock Farms, Inc., an Indiana corporation." *Record* at 27. Waldron's proposed amended complaint was identical to the original complaint except that Wilson Livestock Farms, Inc. was named additionally as a defendant in the caption. The trial court granted the Wilsons' motion to amend their answer and denied Waldron's motion to amend his complaint on August 8, 1984. On May 17, 1985, Waldron moved for the trial court to reconsider its ruling on his previous motion to amend. This motion was denied by the trial court on September 24, 1985. The trial court explained "that if the party [Waldron] seeks to add by amendment did receiv [sic] notice, constructive or otherwise, such alleged notice came after the applicable statue [sic] of limitations had expired." *Record* at 42. The trial court determined that there was no just reason for delay and directed entry of judgment against Waldron as to Wilson Livestock Farms, Inc., pursuant to T.R. 54(B).

Additionally, certain facts were stipulated to by the parties. Max and Earl are father and son and were engaged in a farming operation continuously from 1955 to January 11, 1980. On January 11, 1980, Wilson Livestock Farms, Inc. (the Corporation) was incorporated. The Corporation carried on substantially the same farming business as the Wilsons had carried on before the incorporation. The Wilsons were employees and the sole shareholders of the Corporation. Earl was the president and director of the Corporation from its inception through August 18, 1983. Max was secretary-treasurer and a director of the Corporation from its inception through August 18, 1983. There were no other officers or directors during the same time period. In October, 1980, Max was resident agent of the Corporation.

The injury to Waldron took place on a farm owned and operated by the Corporation. The real estate was conveyed to the Corporation on February 1, 1980. All the equipment used in the farming operation in 1980 was owned by the Corporation.

Although the Wilsons had knowledge of Waldron's injury within one hour from the time it happened, Waldron did not place the Wilsons on notice of his claim prior to filing his complaint. No summons or other notice was directed by Waldron to the Corporation prior to October 15, 1982 when the complaint was served. Meridian Mutual Insurance Company, the liability insurance carrier for Max, Earl, and the Corporation, was notified by American States Insurance Company, the workmen's compensation carrier for Waldron's employer, of its claim for subrogation. The letters, dated May 27, 1981 and July 12, 1982, referred to the insured as Max and Earl and made no mention of the Corporation as an insured.

■ The court of appeals found two issues were raised in the appeal:

1. Did Waldron pursue a timely appeal in this action?

2. Did the trial court err in denying Waldron's motion to amend?

The court of appeals found Waldron timely pursued his appeal and we summarily affirm the court of appeals opinion on that issue and adopt it as a part of this opinion. The court of appeals further affirmed the trial court in its denial of Waldron's motion to amend, citing this court's decision in *Czarnecki v. Lear Siegler, Inc.* (1984), Ind., 471 N.E.2d 299. It is our observation our holding in *Czarnecki* was contravened and accordingly we vacate the opinion of the court of appeals on this issue and reverse the trial court.

█ In *Czarnecki*, the complaint was filed August 31, 1977, one day before the statute of limitations had run. Summons and complaint were served on Hinson Cab Co. on September 2, 1977, clearly after the statute had run. Actually there was no Hinson Cab Co. but the manufacturer of the cab was Royal Industries, Inc., through its Hinson Division. Royal Industries merged into Lear Siegler, Inc., and in the same year the assets of the former Hinson Division of Royal Industries, Inc. were purchased by Hinson Manufacturing Company, Inc. Royal Industries, Inc. was not served and never received notice of the institution of the action. Five years after the accident, on September 12, 1980, a summons addressed to Hinson Cab Co. was served on Hinson Manufacturing Company, Inc. · This was the first notice of the action received by Hinson Manufacturing Company, Inc., or its predecessors, Lear Siegler Inc., and Hinson Division Royal Industries, Inc. This court held:

> It is clear that Ind.R.Tr.P. 15(C) contemplates the newly named defendant will have received notice of the institution of the action such that he will not be prejudiced in maintaining his defense on the merits. It is equally clear the rule contemplates that such a defendant knew or should have known that but for a mistake concerning the identity of the proper party the action would have been brought against him. Rule 15(C) would relate back here if the summons addressed to Hinson Cab Company had actually been served on Royal Industries, Inc., Hinson Division, and Royal would therefore have been given notice that suit was being brought against the manufacturer of the cab, which, of course, was Royal, and that they were the intended target defendant even though misnamed by the summons served. An amended complaint served after the running of the statute of limitations which properly named Royal Industries, Inc., Hinson Division, as a defendant, would ·have related back under 15(C) because clearly they would have had notice of the institution of the action and would have known that but for a mistake of misnomer they were the intended target defendant.

*Czarnecki*, at 301.

T.R. 15(C)(1) does not require process or that a summons be served before the statute of limitations has expired. What is required is such notice of the institution of the action that the added defendant will not be prejudiced in maintaining his defense on the merits. In the instant case, Waldron filed his cause on October 14, 1982, the last day within the statute of limitations. The Wilsons received the complaint and summons on October 15, 1982; service would have been effective and proper had it not been for the misnomer. In fact, the Wilsons raised no question about the service for three years. Even though there was a misnomer, however, the newly named defendant clearly would have had notice the action was instituted and would have known, but for the misnomer, they were the intended target defendants. We also note the added defendant had notice the action was instituted before the statute had run. Meridian Mutual Insurance Company, the liability insurance carrier for Max, Earl, and the corporation, was notified by American States Insurance Company, the workmen's compensation carrier for Waldron's employer, of its claim for subrogation. This was done by letters dated May 27, 1981 and July 12, 1982. Thus the necessary parties were notified of the impending action. The trial court improperly denied Waldron's motion to amend. The trial court is in all other respects affirmed.

DeBRULER and GIVAN, JJ., concur.

DICKSON, J., concurs with separate opinion in which PIVARNIK, J., concurs.

SHEPARD, C.J., dissents with separate opinion.

DICKSON, Justice, concurring.

Trial Rule 15(C) of the Indiana Rules of Procedure qualifies the nature of the notice prescribed as a precondition to relation back. It requires merely receipt of "such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits." While the United States Supreme Court fails to recognize and implement this qualification in its application of the analogous Fed.R.Civ.P. 15(c) in *Schiavone v. Fortune* (1986), 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18, such decision does not compel us to an identical interpretation and application of our rule. *See Gumz v. Starke County Farm Bureau Co-op. Assn.* (1979), 271 Ind. 694, 395 N.E.2d 257; *Celina Mutual Ins. Co. v. Forister* (1982), Ind.App., 438 N.E.2d 1007; *Hiatt v. Yergin* (1972), 152 Ind.App. 497, 284 N.E.2d 834.

Because the filing of the complaint constituted constructive notice to the named defendants Earl Wilson and Max L. Wilson "within the period provided by law for commencing the action," I agree that such notice was likewise sufficient under T.R. 15(C) to timely notify Wilson Livestock Farms, Inc., the farming corporation of which the defendants were the sole officers and directors. The corporation cannot thereby be prejudiced in maintaining its defense on the merits. *See Honda Motor Co. v. Parks* (1985), Ind.App., 485 N.E.2d 644; *see also* 2 W. Harvey, *Indiana Practice* 62–66 (2d ed. 1987); Harvey, *Rules, Rulings for the Trial Lawyer*, Res Gestae, July 1987, at 20, 23.

The majority opinion is consistent with the requirement of Trial Rule 1 that the Indiana Rules of Procedure "shall be construed to secure the just, speedy and inexpensive determination of every action."

PIVARNIK, J., concurs.

SHEPARD, Chief Justice, dissenting.

Two years after his injury, plaintiff Roger Eugene Waldon sued Earl and Max Wilson for damages. Nearly four years after his injury he sought to sue Wilson Livestock Farms, Inc. The General Assembly has determined that such actions must commence within two years. Ind.Code § 34–1–2–2(1) (Burns 1986 Repl.). This case tests the extent which the judiciary can permit the lawsuit to be brought later.

The device by which courts have permitted tardy lawsuits to be brought notwithstanding the legislative directive is Trial Rule 15(C), Ind.Rules of Procedure. That rule provides:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment:
>
> (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits; and
>
> (2) knew or should have known that but for a mistake concerning the identity of the proper party, the action would have been brought against him.

Indiana's rule and the identical federal rule were designed to ameliorate the harsh result which obtained when a plaintiff misnamed a defendant or named a defendant in the wrong capacity. For those occasions on which it was clear that the right person had been before the court all along but merely misnamed, justice required a provision permitting amendment.

The opportunity to name new parties, however, is carefully limited by Trial Rule 15(C). Subsection 1 requires that the new party must have received such notice of the institution of the action that he will not be

prejudiced in defending. The most respected authorities in the field of civil procedure agree that notice of the incident is not adequate. The party sought to be brought in must have notice, even informal notice, that a lawsuit has commenced. 3 J. Moore, *Moore's Federal Practice* Chapter 15.15[4.-2] (1987); 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1498 (1971).

The question in this case is *when* the Wilsons and Wilson Livestock Farms, Inc., must have received notice. Trial Rule 15(C) plainly says that a party sought to be added must have received it "within the period provided by law for commencing the action against him." It is undisputed that they did not. Because they did not, the rule does not provide a basis for permitting an action against Wilson Livestock Farms, Inc., beyond the statute of limitations. While my brother Dickson asserts that plaintiff's filing of his complaint gave "constructive notice" during the required period, such an interpretation leaves this section of the rule without meaning. After all, every request for amendment to add parties arises in a case in which the plaintiff filed a timely complaint.

To conclude that the corporation is eligible to be added, one would have to accept the idea that someone like the Wilsons could receive notice days or even years after the action was initiated. This Court declined to accept that idea in *Czarnecki v. Lear Siegler, Inc.* (1984), Ind., 471 N.E.2d 299.

Whether this rule is too liberal or too restrictive is a matter of policy which might be debated. What the rule provides is really not debatable. As Justice Blackmun wrote for six members of his Court in deciding a case identical to the one before us:

We do not have before us a choice between a "liberal" approach toward Rule 15(c), on the one hand, and a "technical" interpretation of the Rule, on the other hand. The choice, instead, is between recognizing or ignoring what the Rule provides in plain language. We accept the Rule as meaning what it says.

. . .

The linchpin is notice, and notice within the limitations period.

*Schiavone v. Fortune,* 477 U.S. 21, 30–31, 106 S.Ct. 2379, 2385, 91 L.Ed.2d 18, 28–29 (1986).

Appellant cites Professor William Harvey's declaration that the U.S. Supreme Court decision in *Schiavone* is "influential, but not impressive or persuasive." 2 W. Harvey, *Indiana Practice, Rules of Procedure Annotated* 64 (1987). Notwithstanding this critique, every state appellate court which has considered the meaning of Trial Rule 15(C) in the last three years has reached exactly the same conclusion as our Court of Appeals reached in this case. *Kiehn v. Nelsen's Tire Company,* 45 Wash.App. 291, 724 P.2d 434 (1986); *Herrera v. Conner,* 111 Idaho 1012, 729 P.2d 1075 (1987); *Nolph v. Scott,* 725 S.W.2d 860 (Ky.1987).

This Court was on a similar track when it decided *Czarnecki v. Lear Siegler, Inc.* and cited with approval *Simmons v. Fenton,* 480 F.2d 133 (7th Cir.1973). 471 N.E.2d at 300–301. Today's decision takes us off in a different direction—different from the other state courts which have considered the question, different from the U.S. Supreme Court, and different from our own prior pronouncements.