Louis **CATELLIER**, Appellant–Plaintiff,

v.

**DEPCO, INC.,** Appellee–Defendant.

No. 29A02–9709–CV–626.

Court of Appeals of Indiana.

June 17, 1998.

Eugene G. Ziobron, Indianapolis, for Appellant–Plaintiff.

Patrick R. Ragains, Smith, Ragains & Cotton, Anderson, Michael E. Farrer, Bingham, Farrer & Wilson, P.C., Elwood, for Appellee–Defendant.

## OPINION

MATTINGLY, Judge.

Louis Catellier (Catellier) appeals a trial court order that required Depco, Inc. (Depco) to pay him $419.95. We restate the issues Catellier has raised for review:

    1.  Whether the judge pro tempore was properly appointed;

    2.  Whether the evidence supports particular findings contained in the trial court's order; and

    3.  Whether the trial court erred when it failed to find Depco liable to Catellier for breach of contract and criminal conversion.

Affirmed and remanded with instructions to calculate, and to execute in favor of Depco, an award of appellate attorney fees.

### FACTS AND PROCEDURAL HISTORY

Catellier, the operator of an excavating business, contracted to purchase a new hydraulic pump from Depco at a cost of $2,042. Catellier and one of his employees installed

the new pump on a mechanical excavator. After the new pump did not work properly, Catellier returned it to Depco, exchanging it for a $1,050 used pump. At the time of the exchange, Catellier asked Depco to pay him a refund of $992—the price difference between the new pump and the used one.

Depco inspected the returned pump, finding scarred metal inside. Believing it had been damaged, Depco sent the pump to the manufacturer. After an inspection, the manufacturer was unable to attribute the pump's damage to faulty parts or faulty workmanship. As a result, Depco concluded that the pump had been damaged when Catellier improperly installed it in the excavator.

Depco's "return policy" for hydraulic pumps precluded a refund for returned goods with damage caused by the customer. R. at 44, 176–78. Consequently, Depco declined to give Catellier the full amount of the refund, offering instead a partial refund of $419.95.[1]

Seeking to recover a full refund, Catellier filed a complaint against Depco in the trial court's small claims division. The complaint, which was set forth in two counts, alleged (1) that Depco's failure to pay Catellier $992 amounted to breach of contract and (2) that Depco had criminally converted $992 of Catellier's money. The issues raised in Catellier's complaint were litigated in a bench trial before a judge pro tempore. An order was then issued in which the trial court, *sua sponte*, made findings of fact and conclusions of law. The trial court found in favor of Depco on Catellier's complaint, but ordered Depco to refund Catellier $419.95, finding that otherwise, Depco would be unjustly enriched.

This appeal ensued after Catellier's motion to correct error was denied.

## DISCUSSION

### 1. Appointment of the Judge Pro Tempore

■ Catellier alleges that the judge pro tempore was not appointed properly and was therefore without authority to preside over or rule on his case. We must determine whether a challenge to the authority of the judge pro tempore was properly made in the trial court, thus preserving the issue for appeal. *Garage Doors of Indianapolis, Inc. v. Morton,* 682 N.E.2d 1296, 1300 (Ind.Ct.App. 1997). Catellier did not raise this issue at trial, instead raising it for the first time in his motion to correct error. That is insufficient, as parties may not raise an issue for the first time in their motion to correct errors. *In re S.L.,* 599 N.E.2d 227, 229 (Ind. Ct.App.1992). Because Catellier failed to object at the trial court level, he has waived the issue of the judge pro tempore's appointment.

### 2. The Trial Court's Findings of Fact

#### a. Standard of Review

■ Because the trial court, *sua sponte,* entered specific findings of fact and conclusions of law, the specific findings control only with respect to the issues they cover and the general judgment will control as to the issues upon which the court has not found. *In re Marriage of Snemis,* 575 N.E.2d 650, 652 (Ind.Ct.App.1991). We may not reverse the trial court's findings unless they are clearly erroneous. *Id.* "[T]he general judgment will be affirmed if it can be sustained upon any legal theory by the evidence introduced at trial." *Id.* at 652. In our review, we will consider only the evidence that is most favorable to the trial court's judgment and will not weigh the evidence or judge the credibility of witnesses. *Breeden v. Breeden,* 678 N.E.2d 423, 425 (Ind.Ct.App.1997).

#### b. Damage to the New Pump

The trial court found that Catellier damaged the new pump by improperly installing it on his excavator. R. at 70. Catellier's claim that this finding is without evidentiary support is inaccurate. The trial court was presented with testimony[2] which could sup-

---

1. The offer of a partial refund apparently was Depco's attempt to make a good-will gesture toward Catellier, whom Depco believed to be its "good customer." The $419.95 represented the $992 Catellier requested, minus $572.05 in repair and reshelving expenses.

2. An example of such testimony is that of expert witness Robert C. Drummond. At trial, Drummond testified that the new pump could have been damaged by improper installation. R. at 198. Drummond further testified that, in his view, Catellier damaged the new pump. R. at

port a finding that Catellier damaged the new pump by improperly installing it. Because we cannot say that such a finding is clearly erroneous, we must reject Catellier's claim.

### c. Depco's Return Policy

The trial court found that, under the terms of Depco's return policy, a customer who damaged a purchased item and then returned it was not entitled to a refund of the item's purchase price. R. at 66, 70. Although Catellier challenges this finding, supporting evidence was introduced at trial. R. at 44, 176–78. As a result, this finding is not clearly erroneous and Catellier's challenge fails.

### 3. Catellier's Theories of Recovery

Catellier asserts the trial court erred when it allowed no recovery under either of his two theories of recovery: breach of contract or criminal conversion.

### a. Breach of Contract

It is undisputed that Depco and Catellier entered into a contract for the sale of a hydraulic pump. Because this contract was for the sale of goods,[3] it is governed by the Uniform Commercial Code. Gumz v. Starke County Farm Bureau Coop. Ass'n, Inc., 271 Ind. 694, 699, 395 N.E.2d 257, 262 (1979). However, Catellier's argument on appeal neither demonstrates how he is entitled to recover for breach of contract under the UCC nor attempts to show that those provisions do not govern the contract. Under these circumstances, Catellier presents no issue of error. We therefore decline to review the trial court's ruling on his breach of contract claim.

### b. Criminal Conversion

Catellier alleges that Depco, by retaining the full refund of $992, incurs civil liability under Indiana's criminal conversion statute, which provides: "[a] person who knowingly or intentionally exerts unauthorized control over property of another person commits

criminal conversion, a Class A misdemeanor." Ind.Code § 35–43–4–3. A civil action under this statute is permitted by Indiana Code § 34–4–30–1, which states that "[i]f a person suffers a pecuniary loss as a result of a violation of IC 35–43 . . ., the person may bring a civil action against the person who caused the loss for [damages.]"

The criminal conversion statute has a mens rea element, requiring the unauthorized control to be either knowing or intentional. Coffel v. Perry, 452 N.E.2d 1066, 1069 (Ind.Ct.App.1983). Mens rea is not, however, an element of tortious conversion. Id. The evidence most favorable to Depco is that Depco believed it was entitled to retain the $992 which Catellier claimed was his. From this evidence, we cannot say the trial court's conclusions were erroneous as a matter of law.

### 4. Appellate Attorney Fees

Depco claims it has been subjected to defending a frivolous appeal and is entitled to an award of appellate attorney fees pursuant to Indiana Appellate Rule 15(G), which provides that:

> If the court on appeal affirms the judgment, damages may be assessed in favor of the appellee not exceeding ten percent (10%) upon the judgment, in money judgments, and in other cases in the discretion of the court; and the court shall remand such cause for execution.

The damages available under this rule are sometimes characterized as appellate attorney fees. Greasel v. Troy, 690 N.E.2d 298, 304 (Ind.Ct.App.1997). We may award appellate attorney fees "when an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay." Hyundai Motor Co. v. Stamper, 651 N.E.2d 803, 810 (Ind.Ct.App.1995).

---

176. From Drummond's testimony alone, the trial court could have found that Catellier damaged the new pump by improperly installing it.

3. Under the UCC, " '[g]oods' means all things (including specially manufactured goods) which are movable at the time of identification to the

contract for sale, other than the money in which the price is to be paid, investment securities . . ., and things in action." Ind.Code § 26–1–2–105(1). The hydraulic pump that Catellier purchased from Depco falls within the Uniform Commercial Code's definition of "goods."

We grant Depco's request for appellate attorney fees, not because Catellier's appeal is frivolous, but because Catellier's appeal is permeated with bad faith. A litigant's bad faith on appeal may be classified as "substantive" or "procedural." Substantive bad faith "implies the conscious doing of a wrong because of dishonest purpose or moral obliquity." *Watson v. Thibodeau*, 559 N.E.2d 1205, 1211 (Ind.Ct.App.1990) (quoting *Young v. Williamson*, 497 N.E.2d 612, 617 (Ind.Ct.App.1986)). Procedural bad faith "is present when a party flagrantly disregards the form and content requirements of the Rules of Appellate Procedure, omits and misstates relevant facts appearing in the record, and files briefs appearing to have been written in a manner calculated to require the maximum expenditure of time both by the opposing party and the reviewing court." *Id.* Conduct can be classified as procedural bad faith even if it falls short of being deliberate or by design. *Id.*

This appeal is permeated with procedural bad faith, which is apparent upon examination of Catellier's appellate brief. This brief, in many ways, fails to meet the requirements of our appellate rules. We deal in turn with the brief's most significant shortcomings.

Catellier has violated Appellate Rule 8.2(A)(4) by submitting an appellate brief that exceeds 30 pages. Although there are mechanisms provided in this rule which allow a party to submit a brief in excess of 30 pages, Catellier has failed to make use of them.[4]

In contravention of Appellate Rule 8.2(A)(1), the text and footnotes of Catellier's brief are printed in a typeface that is smaller than 12–point.

Catellier's statement of the case is defective because it contains argument. *Young v. Butts*, 685 N.E.2d 147, 151 (Ind.Ct.App.1997). His statement of the facts also contains argument and is not presented in the light most favorable to the judgment—a clear violation of Appellate Rule 8.3(A)(5). *Owens v. Schoenberger*, 681 N.E.2d 760, 762 n. 1 (Ind.Ct. App.1997).

Catellier's case citations do not provide pinpoint citations to help us find the particular page on which we may find the material to which Catellier directs our attention. As a result, he fails to meet the strictures set forth in the current edition of a *Uniform System of Citation* "Bluebook." This is a failure to comply with Appellate Rule 8.2(B)(1).

The argument section of Catellier's brief does not meet the standard that Appellate Rule 8.3(A)(7) demands. Many of the arguments presented in the brief are so lacking in cogency that we can discern Catellier's contentions only through the exertion of great effort. Such arguments are unacceptable on appeal. *Thorne v. State*, 687 N.E.2d 604, 605 n. 1 (Ind.Ct.App.1997).

Similarly unacceptable are the accusatory statements that Catellier substitutes for cogent argument. In one part of his brief, Catellier baldly asserts that "the trial court seemed determined to enter judgment in favor of Depco[.]" Brief of the Appellant at 17. Catellier elaborates on the meaning of this assertion in another part of his brief, alleging that the trial court "was doing everything it could to fashion a judgment in favor of Dep-

---

4. Appellate Rule 8.2(A)(4) states:
*Length of Brief.* Briefs must comply with the subdivisions of this provision. Variances may be permitted at the discretion of the court to which the brief is directed, but only for good cause shown by written petition. The restrictions of this provision do not prohibit a party from filing a separately bound appendix for submission of significant parts of the record or other material deemed useful.
(a) A brief may not exceed thirty (30) pages unless there has been compliance with subdivision (A)(4)(b) of this Rule.
(b) A brief which is in excess of thirty (30) pages is acceptable if it contains no more than 14,000 words. Headings, footnotes, and quotations count toward this word limitation but the items listed in App.R. 8.3(A)(1) do not. Any brief submitted which is longer than thirty (30) pages in length must be accompanied by a verified statement of the attorney or unrepresented party responsible for preparing the brief stating the number of words in the brief (exclusive of the App.R. 8.3(A)(1) items) and the method by which the word count was obtained. The attorney or person so verifying may rely upon the word count of the word processing system used to prepare the brief.

co, straining credulity in the process and fabricating legal theories and stretching legal concepts beyond any reason." *Id.* at 31. Catellier goes on to make note of what he calls "the machinations of the Court's reasoning[.]" *Id.* These statements do not amount to proper appellate argument. In *Morton,* we condemned accusatory statements resembling those found in Catellier's brief, noting that "the appellate process is not an appropriate forum for these types of blanket accusations, and the accusations are not under any circumstances to be used ... in place of arguments on the merits." 682 N.E.2d at 1305.

Because Catellier's appellate brief demonstrates procedural bad faith through its flagrant disregard for the form and content requirements of our appellate rules, Depco's request for appellate attorney fees is granted. We note, however, that the brief submitted by Catellier was prepared by his counsel, who alone is responsible for violating our appellate rules to an extent warranting an attorney fee award. It is appropriate that appellate attorney fees be assessed against Catellier's counsel. Appellate Rule 15(G); *Young,* 685 N.E.2d at 151–52.

We remand this cause to the trial court, instructing it to calculate the amount of appellate attorney fees that Depco is entitled to recover. We further instruct the trial court to execute the calculated amount in favor of Depco and against Catellier's counsel.

Affirmed.[5]

HOFFMAN and FRIEDLANDER, JJ., concur.

---

5. We are mindful of the fact that this is not the first appeal in which Catellier's counsel has violated our appellate rules. *See Morton,* 682 N.E.2d at 1298–99 n. 1 (noting that Catellier's counsel, who was representing the appellant, had failed to comply with particular portions of this court's appellate rules). In *Morton,* we advised Catellier's counsel that "flagrant violations of the appellate rules can result in waiver of an appeal[.]" 682 N.E.2d at 1299 n. 1. Catellier's counsel is again so advised.