**RED ARROW STABLES, LTD., Red Arrow Trail Riders, Inc., Indiana and Illinois, Inc., Girl Scouts of Calumet Council, Girl Scout Corporation, Michael B. Wells, Claudia Langman and Carol Easton, Appellants–Defendants,**

v.

**RITA VELASQUEZ and Tony Velasquez, Appellees–Plaintiffs.**

No. 46A03–9907–CV–270.

Court of Appeals of Indiana.

March 10, 2000.

Thomas A. Carton, Nicholas J. Parolisi, Bullaro & Carton, Munster, Attorneys for Appellants.

Anthony Ashford, Ruman Clements Tobin & Holub, Hammond, Attorney for Appellees.

## OPINION

SHARPNACK, Chief Judge.

Girl Scouts of Calumet Council ("Calumet Council") bring this interlocutory appeal, pursuant to Indiana Appellate Rule 4(B)(6), of the trial court's denial of its motion for summary judgment. The dispositive issue is whether the trial court erroneously denied Calumet Council's motion for summary judgment on the grounds that Rita Velasquez's amended complaint related back to her original complaint under Ind. Trial Rule 15(C). We affirm.

The undisputed facts follow. On May 19, 1996, Velasquez, while acting as a chaperone at a horse riding activity sponsored by Calumet Council, suffered personal injuries when she fell from a horse. On December 12, 1997, in response to a re-

quest by Velasquez's attorney, Calumet Council's Chief Executive Officer and registered agent, Esther Kristoff, sent Velasquez a copy of a section of a Girl Scout manual entitled, "Safetywise." Then on January 13, 1998, Kristoff received two separate letters from Velasquez's attorney, both addressed to the "Girl Scouts of Calumet Council." The first letter, addressed to Kristoff, stated:

> "We have yet to be in contact with the Girl Scout's liability carrier. I am enclosing a copy of our notice letter and lien regarding our representation of Rita Velasquez with reference to her fall of May 19, 1996. We would appreciate your forwarding this information on to the Girl Scout's liability carrier so that they may handle it appropriately."

Record, p. 88. The second letter, addressed to "Whom it May Concern," advised the recipient that: "I represent Rita Velasquez in a claim arising out of the accident that occurred on May 19, 1996" and that "a claim for damages is hereby being made on behalf of my client for injuries arising out of the above-stated accident." Record, p. 90. Kristoff faxed both letters to St. Paul Fire & Marine Insurance Company ("St.Paul"), Calumet Council's insurance carrier, on January 14, 1998. On that same date, St. Paul confirmed with Velasquez's attorney that it was "the liability carrier for this insured." Record, p. 98. In this letter, the "insured" had previously been set forth as "Girl Scouts of Calumet Council." Record, p. 98. The letter further advised Velasquez's attorney to "[p]lease direct all future correspondence to my attention at the address listed above." Record, p. 98. Velasquez's attorney wrote back to St. Paul on January 19, 1998, acknowledging receipt of its January 14, 1998 letter.

The next event disclosed by the record occurred on April 27, 1998, when Velasquez, acting through her attorney, filed a complaint for damages regarding the May 19, 1996, horse riding incident. The complaint named "Girl Scout Corporation,"

among others, as a defendant. Record, p. 457. A copy of the complaint with a summons was issued to the Girl Scout Corporation's registered agent, Marie Pikens. Velasquez's attorney also sent a copy of the complaint and summons, along with a letter dated May 4, 1998, to St. Paul. In his letter to St. Paul, Velasquez's attorney identified "Girl Scouts Corp." as the insured and gave a claim number that was incorrect by one number.

On June 12, 1998, defendant Girl Scout Corp. filed its answer and affirmative defenses. It raised the following affirmative defense:

> "Plaintiffs have sued the wrong group of Girl Scouts. Defendant Girl Scout Corporation is a holding company where the only activity is that it owns land in Marion County, Indiana. The land is a camp run by Hoosier Capital Girl Scout Council, Inc. (HCGSC). Neither Defendant Girl Scout Corporation nor HCGSC have any knowledge of the plaintiffs, the other defendants, or the events referred to in plaintiff's Complaint. There are 14 separate Girl Scout Councils in Indiana. All 14 are separate corporations. Plaintiffs have sued the wrong group of Girl Scouts."

Record, p. 109. Upon receipt of the Girl Scout Corporation's answer to Velasquez's complaint, Velasquez's attorney realized that he had mistakenly named the wrong defendant. He then filed a motion on July 7, 1998, seeking to amend Velasquez's complaint to add Girl Scouts of Calumet Council as a defendant. The trial court granted the motion on July 9, 1998. Calumet Council received a copy of the summons and Velasquez's amended complaint on July 14, 1998.

On August 31, 1998, Calumet Council filed a motion for summary judgment on statute of limitation grounds, which was denied on November 25, 1998.[1] Calumet Council filed a second motion for summary judgment, also on statute of limitations grounds, on January 29, 1999. The trial court denied Calumet Council's second summary judgment motion on June 8, 1999, holding that Velasquez's amendment to her complaint to add Calumet Council as a party defendant was proper pursuant to Indiana Trial Rule 15(C).

When reviewing the denial of a motion for summary judgment, we apply the same standard as the trial court. *Trotter v. Nelson*, 684 N.E.2d 1150, 1152 (Ind.1997). Therefore, summary judgment should only be granted when the designated evidentiary material demonstrates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.* We resolve any doubt as to any fact, or inference to be drawn therefrom, in favor of the nonmoving party. *Id.* In a summary judgment proceeding in which the movant raises an affirmative defense based on the statute of limitations, the movant need only make a prima facie showing that the cause of action was filed beyond the statutory period. *Hutchison v. Old Indiana Ltd. Liability Co.*, 714 N.E.2d 789, 792 (Ind.Ct.App. 1999), *trans. denied.* The burden then falls on the opponent of the motion to establish the existence of a material fact in avoidance of the statute of limitations defense. *Id.*

Here, Calumet Council presented prima facie evidence that Velasquez's complaint was filed beyond the statutory two-year time limit for personal injury claims: Velasquez was injured on May 19, 1996,

---

1. We assume for purposes of this appeal that August 31, 1998, is the date that Calumet Council filed its first summary judgment motion. Calumet Council, in its brief, makes no mention of multiple motions. Velasquez, without citation to the record, asserts that August 31, 1999 is the appropriate date. However, the trial court's order denying Calumet Council's first motion for summary judgment is dated November 25, 1998. Therefore, without any citations to the record directing us to the first motion and the date thereof, we assume that Velasquez recited the right day for the filing but mistakenly put the wrong year.

and the amended complaint against Calumet Council was filed July 7, 1999. However, the trial court denied Calumet Council's motion for summary judgment, finding that Velasquez's amended complaint related back to the date of the filing of the original complaint. The relation back of an amended complaint is governed by Indiana Trial Rule 15(C), which provides in relevant part:

"Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment:

(1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits; and

(2) knew or should have known that but for a mistake concerning the identity of the proper party, the action would have been brought against him."

Ind. Trial Rule 15(C).

■ The key element to relation back under Trial Rule 15(C) is notice. *Soley v. VanKeppel,* 656 N.E.2d 508, 511 (Ind.Ct. App.1995). Mere awareness that an injury has occurred or that the injured party has retained counsel is insufficient to satisfy the requirements of Rule 15(C). *Hutchison,* 714 N.E.2d at 793. Rather, the notice must be such that the party named in the amended pleadings received either actual or constructive notice of the institution of the legal action. *Id.* Moreover, such notice must be received within the time period provided by law for commencing the action. *Gulley v. Winter,* 686 N.E.2d 176, 180 (Ind.Ct.App.1997) (quoting *Fifer v. Soretore–Dodds,* 680 N.E.2d 889, 891 (Ind.

Ct.App.1997), *reh'g denied, trans. denied,* 698 N.E.2d 1182). The purpose behind this notice requirement is to ensure that the defendant will not be prejudiced in maintaining his defense on the merits. *Soley,* 656 N.E.2d at 511.

Calumet Council contends that the requirements of Rule 15(C) were not met because it did not receive notice of the instant lawsuit until July 14, 1998, almost two months after the statute of limitations had expired. Velasquez does not contest Calumet Council's assertion that it did not receive actual notice until July 14, 1998; however, she does claim that Calumet Council received constructive notice of the lawsuit prior to the tolling of the limitations period. Calumet Council received constructive notice of the lawsuit, Velasquez claims, when her attorney served St. Paul with notice of the suit. Calumet Council counters by arguing that St. Paul was not an agent for Calumet Council and therefore notice to St. Paul cannot be imputed to it.

■ In making its argument that St. Paul was not its agent, Calumet Council relies on the fact that "an insurer is not an insured's agent for purposes of receiving notice of the filing of a lawsuit." Appellant's Brief, p. 21. It is true that an insurer is not an insured's agent for *service of process* unless so provided by rule, statute, or valid agreement. Ind. Trial Rule 4.1(A); *Poteet v. Bethke,* 507 N.E.2d 652, 657 (Ind.Ct.App.1987). However, Trial Rule 15(C) does not require that the added defendant be served with process before the statute of limitations has expired. *Wathen v. Greencastle Skate Place, Inc.,* 606 N.E.2d 887, 891 (Ind.Ct.App. 1993). *Notice* that a lawsuit has been filed, something less than service, is what is necessary to satisfy the rule's requirements regarding relation back of amendments. *Id.; see, e.g., McCracken v. Brentwood United Methodist Church,* 958 S.W.2d 792, 797 (Tenn.Ct.App.1997), *appeal denied.* Accordingly, our decision

does not rest upon principles of law established within the context of service of process under Trial Rule 4.

The issue of whether constructive notice to the added defendant is sufficient to satisfy the notice requirements of Trial Rule 15(C) has been answered affirmatively by the courts of this state. *See Logan v. Schafer,* 567 N.E.2d 855, 857 n. 2 (Ind. Ct.App.1991) (noting that the notice requirement of Trial Rule 15(C)(1) is satisfied, at least in some circumstances, by constructive notice); *Creighton v. Caylor-Nickel Hosp., Inc.,* 484 N.E.2d 1303, 1307 (Ind.Ct.App.1985), *reh'g denied, trans. denied* (holding that added defendant had constructive notice of the suit within the time period for commencing the action). However, the issue of whether notice of the institution of a lawsuit given to the added defendant's insurance company, standing alone, constitutes adequate constructive notice to allow relation back under Trial Rule 15(C) is less clear. Velasquez claims that our supreme court "clearly determined that notice to a party's liability insurance carrier is sufficient notice for purposes of T.R. 15(C)" in *Waldron v. Wilson,* 532 N.E.2d 1154 (Ind. 1989). Calumet Council, on the other hand, argues that *Waldron* is inapplicable because it is a case of misnomer, not relation back.

In *Waldron,* the plaintiff filed suit against two individuals on the last day of the limitations period. *Id.* at 1155. The defendants were served the summons and the complaint the next day. *Id.* Although the defendants initially admitted that they owned the property upon which the injury occurred, they later filed an amended answer wherein they claimed that a corporation, not themselves in their individual capacities, owned the property in question. *Id.* The plaintiff then moved to amend his complaint to add the corporation as a de-

fendant. *Id.* In concluding that the plaintiff's amended complaint related back, our supreme court noted that the original defendants, who were the sole employees, officers, and directors of the corporation sought to be added as a party defendant, received notice of the lawsuit one day after the statute of limitations had expired. *Id.* at 1156. In so noting, the court stated that "[e]ven though there was a misnomer ... the newly named defendant clearly would have had notice the action was instituted and would have known, but for the misnomer, they were the intended target defendants." *Id.* The court went on to note that the added defendant received notice that the lawsuit was instituted before the statute had run because its liability insurance carrier was notified by the workmen's compensation carrier for the plaintiff's employer, of its claim for subrogation. *Id.*

■ Confusion from *Waldron* seems to arise from the fact that in cases involving misnomers, the plaintiff seeking to amend her complaint to add a new defendant need only demonstrate that the claim in the amended complaint arose out of the same conduct alleged in the original complaint.[2] *See Crosman Corp. v. Millender,* 701 N.E.2d 295, 297 (Ind.Ct.App.1998), *trans. denied,* 714 N.E.2d 171 (citing *Fifer v. Soretore-Dodds,* 680 N.E.2d 889, 891 (Ind. Ct.App.1997), *reh'g denied, trans. denied,* 698 N.E.2d 1182). That being the case, the discussion in *Waldron* regarding notice, prejudice, and knowledge of the added defendant that the suit should have been brought against him would be unnecessary if the case were truly one of misnomer. *See Crosman,* 701 N.E.2d at 297. In addition to discussing the requirements for adding a new defendant, our supreme court specifically mentioned Trial Rule 15(C)(1) in its discussion in *Waldron.* Because both are unnecessary in a case involving merely a misnomer, we conclude

---

**2.** A misnomer occurs when the proper party was served with a copy of a complaint in which she was misnamed. *Wathen v. Greencastle Skate Place, Inc.,* 606 N.E.2d 887, 890 (Ind.Ct.App.1993). The substitution of the correct name due to a misnomer applies to the misnomer of the party already in the suit, not a different party. *Id.*

that *Waldron* is actually a case involving the addition of a new party by an amended complaint. *But cf., Hutchison v. Old Indiana Ltd. Liability Co.,* 714 N.E.2d 789, 793 (Ind.Ct.App.1999) (interpreting *Waldron* as impliedly based on the "identity of interest" principle); *Logan v. Schafer,* 567 N.E.2d 855, 857 (Ind.Ct.App.1991) (citing *Waldron* as a case where the proper party was served with a copy of the original complaint in which it was misnamed). Moreover, due to its discussion of the pertinent issues, we further conclude that we may properly look to *Waldron* for guidance in our resolution of this issue regardless of whether *Waldron* is a case of misnomer or a case concerning the applicability of Trial Rule 15(C)(1) and (2) when a new party is added.

In *Waldron,* the party sought to be added did not receive actual notice that the lawsuit had been filed until after the statute of limitations had expired. *Waldron,* 532 N.E.2d at 1155–1156. However, our supreme court stated that "the added defendant had [constructive] notice that the action was instituted before the statute had run" because its insurance carrier had been notified by the plaintiff's employer of its claim for subrogation. *Id.* at 1156.

Other jurisdictions addressing the issue of whether notice to a party's liability insurance carrier, by itself, is sufficient to allow relation back of an amendment have answered in the affirmative. In *Smith,* the plaintiff fell and suffered injuries while at Hardee's Restaurant. *Smith v. TW Services, Inc.,* 142 F.R.D. 144, 145 (M.D.Tenn.1991). Counsel for the plaintiff contacted the insurance adjusters for Hardee's, advising them of the accident and of counsel's representation of the plaintiff. *Id.* At some point, TW (Hardee's licensee) assumed the handling of plaintiff's claim, and plaintiff's counsel was advised to direct all future correspondence to the claims representative of the liability insurer for TW. *Id.* Approximately one week before the statute of limitations expired, plaintiff filed suit, naming only Hardee's as a defendant. *Id.* at 146. Despite naming only Hardee's as a defendant, plaintiff did mail TW's insurer a copy of the complaint. *Id.* at 145. After the statute of limitations had expired, plaintiff filed a motion to amend her complaint to add TW as a defendant. *Id.* at 146. Because there was no dispute that the defendant to be added did not have actual notice of the lawsuit within the limitations period but that its insurer did, the only issue was whether the notice to the insurer was sufficient to fulfill the requirements for relation back under Rule 15(c) of the Federal Rules of Civil Procedure.[3] *Id.* at 147. In holding that plaintiff's motion to amend should be allowed to relate back to the date of the original complaint, the court noted that the plaintiff is only obligated to provide notice which is sufficient to prevent prejudice in the maintenance of a defense. *Id.* at 149.

"Intuitively, there is little prejudice to a defendant when his own liability insurer, who will likely be heavily involved in the defense, has notice of a suit within the limitations period. [The insurer] had full authority to investigate and settle the claim and would play a key role in the impending litigation. This is not a so-called 'identity of interest' case, but there is still a substantial unity of interests between [the insurer] and [the added defendant] with respect to this litigation."

*Id.*

We find the reasoning in *Smith* to be sound. In the instant case, Calumet Council was alerted to Velasquez's accident and her subsequent claim for medical expenses by December 1997 at the latest. By January 1998, St. Paul, the insurance carrier for Calumet Council, was aware that Velasquez had obtained counsel and was making "a claim for damages." Record, p.

---

**3.** Because the Indiana Trial Rules are based on federal rules, our courts have held that it is appropriate to look to federal decisions for guidance. *Indiana Farmers Mut. Ins. Co. v. Richie,* 707 N.E.2d 992, 997 (Ind.1999).

90. Upon receipt of this information, St. Paul requested that Velasquez's counsel "direct all future correspondence" to it. Record, p. 98. Approximately three weeks before the statute of limitations expired, Velasquez, acting through her attorney, filed suit, incorrectly naming the "Girl Scout Corporation" as a defendant rather than the "Girl Scouts of Calumet Council." Within days, Velasquez's attorney notified St. Paul of the impending suit by sending a copy of the complaint and summons, along with a letter that stated, "Please find enclosed a file-stamped copy of the Complaint and Summons which were filed by our client against your insured in the above-named cause." Record, p. 100. Although Calumet Council did not receive actual notice of the lawsuit until almost two months after the statute had run, its insurer, the entity with the "right to investigate any claim or suit," "the right and duty to defend any claim or suit," and "the right to settle any claim or suit," did receive notice of the lawsuit before the tolling of the statute. Record, p. 135. Accordingly, for the same reasons set forth in *Smith*, we hold that notification of the lawsuit to St. Paul was constructive notice to Calumet Council so as to satisfy the requirement of Trial Rule 15(C)(1); namely, that it received notice of the institution of the action such that it will not be prejudiced in the maintenance of its suit.[4] *See id.; see also Waldron*, 532 N.E.2d at 1156.

■ Having determined that Calumet Council received notice, within the time period provided by law for commencing the action, of the institution of the action and that it will not be prejudiced in maintaining its defense on the merits, we now turn to the issue of whether it knew or should have known that but for a mistake concerning the identity of the proper party, the action would have been brought against it. *See* Ind. T.R. 15(C)(2). In this case, we must judge the knowledge of the mistake from the perspective of St. Paul. *See Smith*, 142 F.R.D. at 149. When St. Paul received a copy of Velasquez's complaint, accompanied by a cover letter, on May 6, 1998, it knew, or should have known, that the naming of "Girl Scouts Corporation" as the defendant rather than "Girl Scouts of Calumet Council" was the result of a simple mistake. In so holding, we acknowledge that the "cover letter [to St. Paul informing it of the lawsuit] incorrectly stated that the insured was 'Girl Scouts Corp.' and gave an incorrect claim number." Appellant's Brief, pp. 7–8. In the cover letter, wherein the claim number given was only one number off of the correct one, Velasquez was identified as the client and May 19, 1996 was identified as the date of the incident. Velasquez's attorney had also given this identical information, written by the same law firm on the same letterhead, in his previous communications with St. Paul regarding Velasquez's "claim for damages." Record, p. 90. Additionally, Velasquez's attorney had previously identified "Red Arrow Trails" as the location of the accident, and the complaint, which St. Paul received a copy of, alleged that Velasquez was a business invitee at the premises of "Red Arrow." Record, pp. 90, 458. While we acknowledge that the incorrect claim number, and to a lesser extent the incorrect name of the insured, on the cover letter informing St. Paul of the lawsuit may have caused a momentary confusion, it certainly cannot be said that "[t]here was no evidence in St.

---

4. We note that Calumet Council has neither alleged nor established any prejudice it might suffer in defending this suit. Moreover, our holding is not based on the law of agency, the sole basis of Calumet Council's attack on the lower court's judgment, but on the substantial unity of interests between St. Paul and Calumet Council such that Calumet Council will suffer no prejudice in defending the suit. For this reason, Calumet Council's argument that "even if [it] is not entitled to summary judgment," then "the most that Velasquez is entitled to is a trial on the issue of agency," must fail. Appellant's Brief, pp. 29–30; *see e.g., Choung v. Iemma*, 708 N.E.2d 7,11 (Ind.Ct. App.1999), *reh'g denied* (noting that summary judgment is proper when no dispute exists with respect to the facts that are dispositive of the litigation).

Paul's hands to suggest that Girl Scouts of Calumet Council was the correct party." Appellant's Brief, p. 29. Therefore, we hold that St. Paul knew or should have known shortly after receiving the letter and a copy of the complaint from Velasquez's attorney that the omission of the "Girl Scouts of Calumet Council" as a defendant was the result of a mistake. *See id.* at 150; *see also Waldron*, 532 N.E.2d at 1156.

Having determined that all the requirements of Trial Rule 15(C) have been met, we conclude that Calumet Council is not entitled to judgment as a matter of law.[5] For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

RILEY, J., and KIRSCH, J., concur.

---

5. Due to our resolution of this issue, we need not address the other contentions raised by the parties.